Co obey, Ch. J.:
The controversy in this case relates to lands granted by congress to the state of Michigan to aid in the construction of railroads. The grant was made by the act of June 3, 1856, the first section of which granted in aid of certain railroads therein specified, and among others one “from Grand Haven and Pere Marquette to Flint, and thence to Port Huron,” every alternate section of land designated by odd numbers for six sections in width on each side of each of said roads, with provision for making up any deficiency caused by lands having been previously sold or otherwise appropriated. The third section of the act provided that the lands should be subject to the disposal of the legislature of the state for the purposes specified, and no other. The fourth section was as follows: “That the lands hereby granted to said state shall be-disposed of by said state only in manner following, that is to say: that a quantity of land not exceeding one hundred and twenty sections for each of said roads and included within a continuous length of twenty miles of each of said roads, may be sold; and when the governor of the state shall certify to the secretary of the interior that any twenty continuous miles of any of said roads is completed, then another quantity of land hereby granted, not exceeding one hundred and twenty sections for each of said roads having twenty continuous miles completed as aforesaid, and included within a continuous length of twenty miles of each of such roads, may be sold; and so from time to time until said roads are completed; and if *any of said roads is not completed within ten years no further 228 *229 sales shall be made, and the lands unsold shall revert to the United States.” — 11 Btat. at Large, 21, 22.
This grant of lands was accepted by the state by an act approved February 14, 1857, the second section of which provided that “so much of the aforesaid lands, franchises, rights, powers, and privileges as are or may be granted and conferred in pursuance of said act of congress to aid in the construction of a railroad * * * from Grand Haven to Flint and thence to Port Huron, are hereby vested fully and completely in the Detroit & Milwaukee Railway Company and in the Port Huron & Milwaukee Railroad Company in the manner following, to-wit: so much of said lands as pertain or attach to said route from Grand Haven to Owosso, in the county of Shiawassee, are hereby vested fully and completely in the Detroit & Milwaukee Railway Company, and so much of said lands as pertain or attach to said route from Owosso to Flint, and thence to Port Huron, are hereby vested fully and completely in the Port Huron & Milwaukee Railway Company, to aid in the construction of the roads of said companies respectively.” The fifth section provided how the grants should be accepted by railway companies respectively, and the seventh section provided that “ each of said companies, after the completion of ■twenty continuous miles of its railroad, and after the governor shall have certified to the secretary of the interior that such twenty continuous miles of its road are so completed, then, and not before, said company may sell sixty sections of land included within any continuous twenty miles of its line of road; and in like manner upon the completion of each other twenty continuous miles it may sell other sixty sections, and so on from time to time until its whole road is completed.” The eighth section established a board of control whose duty it should be “to manage ap^. dispose of such lands in aid of the construction of the aforesaid railroads in the manner in this act provided.” The eleventh section was as follows: “Should either of said railroad companies fail to accept said *lands on the terms of this act within sixty days, or fail to make the survey and maps by the first day of December next, or fail to construct its entire line of road, or *230 any part thereof, in the time and manner required, in such case said board of control shall have the power, and it is hereby made their duty, to declare said lands, so far as they have not been sold in good faith, forfeited to the state, and said board of control are hereby required to confer said lands upon some other competent party, under the general regulations and restrictions of this act.” — Laws of 1867, p. Slfi et seq.
The grant to the Detroit & Milwaukee Railway Company was declared forfeited by the board of control on the 26th day of August, IBS'!. On the first day of May, 1878, the board adopted a preamble and resolutions purporting to transfer the forfeited grant to the Port Huron & Lake Michigan Railroad Company, the preamble reciting that that company “are engaged in constructing and completing a railroad which, with its connections, will form a continuous line from Grand Haven to Flint and thence to Port Huron.” The company presented to the secretary of the interior the proper evidence that they had duly completed three sections of twenty continuous miles each of their railroad, and the lands now in controversy were thereupon conveyed to the plaintiff as trustee for and at the request of said company. The lands are situated in the county of Ottawa, near the western boundary of the state, and the three sections of road completed by the railroad company are' in the eastern portion of the state, between Lapeer and Port Huron.
Many questions have been discussed on this record, but one' which lies at the foundation of the right of recovery concerns the right of the Port Huron & Lake Michigan Railroad Company to receive the forfeited grant which had been made to the Detroit & Milwaukee Railway Company. The original charter of the Port Huron & Lake Michigan company authorized the construction of a railroad from Port Huron to some point at or near the mouth of the Grand river; but the court below found that there is no evidence, *claim, or pretense that said company contemplated building any road on the route from Grand Haven to Owosso. And the question would therefore sewn to be this: whether the legislation of congress and of the state would authorize the board of *231 control to grant lands lying on tbe route from Grand Haven to Owosso for the construction of a road east of Owosso.
Confining our attention now to the state legislation, it may be observed that if the act of 1857 fails to confer upon the board of control the requisite authority, it will be of no importance to the present controversy whether the act of congress would or not have authorized different legislation under which the grant by the board of control which is now relied upon might have been made. By the act of congress the lands were all “subject to the disposal of the legislature of the state,” and if not lawfully disposed of pursuant to state legislation they are not disposed of at all.
The lands granted were lands lying along the proposed lines and within certain distances thereof on either side. Without undertaking to draw an exact line of division between the lands appropriated to the two railroads, the Detroit & Milwaukee and the Port Huron & Milwaukee, the act of 1857 provided that “so much” of the said lands as “are or may be granted and conferred” in aid of a road from Grand Haven to Owosso should be granted to the Detroit Ss Milwaukee,.and “so much of said lands as pertain or attach to said route ” from Owosso by way of Flint to Port Huron should be granted to the Port Huron &> Milwaukee company. The two were distinct grants to distinct companies, and must have been understood as having a distinct line of division which separated those lying easterly from Owosso from those lying westerly of that place. In other words, the idea of the legislature was to provide for two distinct lines of road intersecting at a certain point and to aid each by a grant of the lands lying within the prescribed distance along and near it.
The question then is, whether when the grant to the *Detroit & Milwaukee company was forfeited it was competent to transfer it to the Port Huron & Lake Michigan company. This depends on whether the last named company is a “ competent .party ” within the meaning of the eleventh section of the act of 1857 above quoted. What is a “competent party” within the meaning of that section? Clearly, as we think, it is a party proposing to construct a rail *232 road from Grand Haven to Owosso, and who is to be aided in so doing by a grant of the lands lying within the prescribed distance of the proposed route. A “competent party” for the purposes of this grant is not a company building or proposing to build a road in some other portion of the state, but a company proposing to construct the very line which this grant proposes to assist.
The circuit judge finds that the Port Huron & Lake Michigan company is not proposing to construct a line of road from Grand Haven to Owosso. This is conclusive of the present controversy. It is immaterial that the charter of the company would have authorized such a road; there must be something more than a paper line; for while it remains on paper only, without anv intention to build it, there is nothing to which the grant can be applied. Neither the act of congress nor the act of 1857 contemplated that the lands appropriated to onejhne should be devoted to the construction of another.
It follows that the judgment of the circuit court was correct, and it must be affirmed, with costs-. As a new trial is a matter of right in these cases, the record will be remanded to give opportunity therefor.
The other justices concurred.