JOSEPH E. FENN v. DAVID KINSEY.

*Railroad lands—Unlawful grants—Void legislation.*

Act 132 of 1877, confirming the transfer, by the Governor and Board of Control of Railroads to the Port Huron & Lake Michigan Railroad Company, of lands granted by Congress to the State in aid of the construction of railroads, and at first assigned to the Detroit & Mil-waukee Railway Company, was void as impairing the contract obliga-tion arising from the conditions of the grant, whereby the lands were to revert to the General Government if the roads to which the State assigned them were not completed within a specified time.

Void legislation should be treated as absolutely void until the Legislature after obtaining authority to do so, re-enacts it.

Where an act of a state legislature would impair a contract obligation existing between the State and the General Government, it is void and cannot be given effect by a subsequent release from the con-tract obligation.

Error to Kent. Submitted Jan. 18. Decided Jan. 28.

EJECTMENT. Plaintiff brings error. Affirmed.

*Drury & Maher* and *R. W. Boynton* for plaintiff in error. The concurrence of grantor and grantee is necessary

to pass title: 3 Washb. R. P. 261; *Armitage v. Widoe* 36 Mich. 124; *Wilsey v. Dennis* 44 Barb. 259; *Fonda v. Sage* 46 Barb. 123; *Foster v. Beardsley* 47 Barb. 513; *Young v. Guilbeau* 3 Wal. 636; the presumption of the acceptance of a grant attaches only where the grant imposes no conditions that may be to the disadvantage of the grantee: 1 Phil. Ev. (5th Am. ed.) 609; and if the grantee refuses to accept on the conditions attached, title will not pass: *Bullitt v. Taylor* 34 Miss. 708; the ratification by the legislature of the transfer of railroad lands made by the Governor and Board of Control related back to the time when the action was had, and its legal effect is the same as if previous authority had been conferred: *Scott v. Detroit Young Men's Society* 1 Doug. (Mich.) 119; *Edwards v. Chandler* 14 Mich. 471; *People v. Supervisors* 20 Mich. 95; *Hankins v. Baker* 46 N. Y. 666; 1 Wait's Actions 234; Story on Agency § 242; a grant by one to whom lands have been conveyed in trust, gives the grantee the legal title and right of action which the grantor had possessed, even though the transfer was a breach of trust: 3 Wait's Actions 18; Tyler on Ejectment 192; Hill on Trustees 274; Tiffany & Bullard on Trustees 811; Perry on Trusts §§ 328, 602; *Canoy v. Troutman* 7 Ired. 155; *Reece v. Allen* 5 Gilm. 241; *Taylor v. King* 6 Munf. 358; *Gillespie v. Smith* 29 Ill. 481; *Graham v. Anderson* 42 Ill. 577.

*Taggart & Wolcott* for defendant in error. The Act of Congress of July 3, 1856, vested the lands granted in aid of railroads in the State of Michigan: *Johnson v. Ballou* 28 Mich. 379; act 126 of 1857, governed their sale thereafter, but if its terms were substantially complied with, the State had no authority to grant to other parties or interfere with the title: *Langdeau v. Hanes* 21 Wall. 521; *Courtright v. Cedar Rapids and Missouri R. R.* 35 Ia. 399; *M. K. & T. Ry v. K. P. Ry.* 97 U. S. 491; *Railroad v. Fremont County* 9 Wal. 94; *Lessieur v. Price* 12 How. 59; *Rutherford v. Greene* 2 Wh. 196; *L. L. & G. R. R. v. United States* 92 U. S. 733; this act required no assurances of title

and certificates as to acts done would only be regarded as evidence of title previously passed to the grantee: *Busch v. Donohue* 31 Mich. 481; *Sutherland v Governor* 29 Mich. 322; *Dart v. Hercules* 34 Ill. 395; *C. R. & M. R. R. v. Carroll Co.* 41 Ia. 155; *Alison v. Halface* 11 Ia. 450; *Kissell v. St. Louis* 18 How. 19; *Cooper v. Roberts* 18 How. 173; *Minnesota Min. Co. v. Nat. Min. Co.* 11 Mich. 186; *Ballou v. O'Brien* 20 Mich. 304; vested rights can ordinarily be determined by forfeiture only on judicial determination of the facts: Cooley Const. Lim. 351–362; *People v. Bank of Pontiac* 12 Mich. 537; *Trombley v. Humphrey* 23 Mich. 471; but this does not apply to a legislative grant containing conditions of forfeiture, but a legislative claim of ownership is enough: *Farnsworth v. Minnesota & Pacific R. R.* 92 U. S. 49; but the power of the State to transfer title was limited to a particular purpose and the law governing it is binding until repealed: *Schulenberg v. Harriman* 21 Wal. 59.

CAMPBELL, J.   Fenn sued Kinsey in ejectment to recover certain lands in Kent county, which under the congressional land grant of 1856, and the State law of 1857, had been set apart, by the proper selection, as appropriated to the aid of a railroad from Owosso to Grand Haven.   The plaintiff claimed title under conveyance from William R. Bowes, who claimed under grant from the Port Huron & Lake Michigan Railway Company, to which company the land had been granted by the Board of Control and the Governor acting in pursuance of their grant, in 1873.   We held this action of the Board of Control and of the Governor to be unlawful and void, in *Bowes v. Haywood* 35 Mich. 241; and had the title stood without further action, there could be no doubt of the plaintiff's failure to prove any right.

But it is now claimed that this title, which was void in its creation, was afterwards made good by confirmation.   We must, therefore, look at the various steps in this assumed title to see where the law has left it.   The lands became subject in 1857 to appropriation by the Board of Control to such

proper party as should be competent to build a railroad from Owosso to Grand Haven, by reason of the failure of the Detroit & Milwaukee Railway Company to accept the act of 1857. The Board of Control, in August, 1857, transferred the grant and privileges to certain gentlemen as trustees, who never took any steps to carry out the work, and who subsequently released all their claims to the State.

Nothing further was done until 1871, when the Board of Control resolved that if it could lawfully be done, it would be proper to transfer the grant to the Port Huron & Lake Michigan Company. In 1873 a further resolution was passed declaring in substance that this company was engaged in building a road which, with its connections, would form a continued line from Grand Haven to Flint and thence to Port Huron, and releasing the grant to this company, subject to the obligation to sell the lands to actual settlers in occupancy, at a dollar and a quarter an acre. On May 30, 1873, the Governor made a patent purporting to be issued under this resolution, and to convey to the company the interest of the State in these lands.

At this time this company had neither built nor intended to build any road west of Owosso, and had actually built nothing west of Flint, but had built sixty miles between Flint and Port Huron, Whether this had been certified by the Governor to the Secretary of the Interior does not appear and is not important, because that certificate would only cover lands belonging to the line east of Flint. It does not appear that Congress had ever been asked or had ever consented to extend the time for building a road from Flint or Owosso to Grand Haven, and the time had long run out for doing so.

Immediately thereafter the company made a deed whereby they conveyed the lands to William R. Bowes, his "successors and assigns," as trustees under a contemporaneous declaration of trust which is not put in evidence, to secure the faithful sale and disposition of the lands according to the conditions of the trust. This deed, which was made by William L. Bancroft and Edgar White, who claimed to have been authorized by the directors, was afterwards confirmed by a

45 MICH.—29

vote of directors, but not by the stockholders. Bowes conveyed to plaintiff by warranty deed in 1878.

In 1877 the Legislature passed an act to ratify and confirm the acts of the Governor and Board of Control, giving the conveyance effect from its date. Laws 1877, p. 121. On the 3d of March, 1879, Congress released to the State of Michigan the reversionary interest of the United States. 17 U. S. St. at L. 490.

The court below held, under various rulings at law, that plaintiff had no title established by the facts found.

At the time when the act of 1877 was passed it is beyond question that the State was bound by the terms of the congressional grant, which were formally accepted by the law of 1857, to dispose of none of these lands except for the specific purposes named in the act of Congress. As the United States reserved a right to all lands not legally disposed of under the trust, and under the grant the State itself had no power to divert them, the act of 1877 was in direct violation of that clause of the Constitution of the United States which declares that no State shall pass any law violating the obligation of contracts.

To hold that such a law operated by way of estoppel would be in effect to destroy the weight of the constitutional prohibition. The only proper way to construe void legislation, is to treat it as absolutely void until the legislative power, after obtaining authority to do so, sees fit to re-enact it. Congress did not attempt to bind the State to carry out its illegal action, and could not have done so. Any State Legislature, after 1877, had a right to treat that legislation as if it had never been passed, and a mere release from the obligations of the original contract by Congress could not operate to ratify the illegal action of the State Legislature. It is for the State itself, now that it has plenary power, to act as if there had been nothing done before.

As the illegality of all of these transactions was manifest on the face of the proceedings, it does not occur to us that either the Railway Company or Bowes was in a position to deal with the lands in such a way that mutual estoppels would

arise so as to vest him with any trust in the lands. Whatever right his grantees may have against his estate, if he undertook to convey in his own name and by personal warranty, no such right can be traced back through Bowes and the Railway Company to bind the State. As we do not know what the trust was, we need not consider it further.

The judgment below is correct, and must be affirmed with costs.

MARSTON, C. J. and GRAVES, J. concurred.

COOLEY, J. did not sit in this case.