[No. 4552. Decided February 24, 1903.]

THE STATE OF WASHINGTON *on the Relation of B. F. Heuston* v. C. W. MAYNARD, *as State Treasurer.*

SCHOOL LANDS — PROCEEDS OF SALE — STATUTE AUTHORIZING INVASION OF PRINCIPAL — CONFLICT WITH ENABLING ACT.

The act of March 7, 1895 (Laws 1895, p. 55) providing for the creation of a state normal school fund into which shall be paid all proceeds from the sales of lands granted to the state of Washington by the United States for normal schools, and authorizing the payment of the cost of erection of normal school buildings from such fund is void, because in conflict with the provisions of the enabling act for the admission of this state into the Union, wherein it is provided (§ 11) "that all lands herein granted for educational purposes shall be disposed of only at public sale, . . . the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools."

*Original Application for Mandamus.*

*B. F. Heuston,* for relator.

*W. B. Stratton,* Attorney General, for respondent.

The opinion of the court was delivered by

MOUNT, J.—This is an original application for a writ of mandate to compel the state treasurer to pay the interest upon a warrant issued by the state through its proper officers upon the state normal school fund, in consideration of work done and expenses incurred in the erection of a state normal school building for the Washington State Normal School at New Whatcom. The warrant was drawn pursuant to an act of the legislature, approved March 7, 1895. Laws 1895, p. 55. The fund upon which it was drawn was created by the first section of the act, which is as follows:

"Section 1. There is hereby created a fund to be known as the 'state normal school fund,' into which fund shall be paid all proceeds from the sales of lands granted to the state of Washington by the United States for state normal schools, and that no appropriation for the erection of state normal school buildings shall be made from any other fund, except the fund derived from the sale of lands granted by the United States to the state of Washington for state normal schools."

Sections 2 and 3 of the act appropriate from said funds for the purpose of erecting and equipping a state normal school at Cheney, $60,000, and for another at Whatcom, $40,000. Section 4 authorizes the issuance of bonds to the amount of $100,000, "payable out of the fund provided for in section one of this act, and not otherwise, and no primary or secondary application for the payment of said bonds, except out of the aforesaid fund, is intended to be created by this act. Said bonds shall not be sold for less than par." The state was never able to sell these bonds, and none were ever issued. Section 5 of the act is as follows:

"Sec. 5. Until the sale of said bonds, the work of erect-

ing said normal school buildings shall proceed and be paid for by warrants drawn upon the fund created by this act which shall draw interest at the rate of seven per cent. per annum, payable annually, and whenever there shall not be sufficient moneys in said fund to pay all outstanding warrants, it shall be the duty of the treasurer to reserve a sufficient amount to pay the interest on all outstanding warrants before paying the principal of any senior outstanding warrants. Whenever there shall not be sufficient moneys in said fund to pay the interest on all outstanding warrants drawn against it, the interest shall be paid on warrants in the order in which they are drawn, and all unpaid interest on junior warrants shall draw interest at the rate of seven per cent. annually. Interest on warrants drawn under the provisions of this act shall be computed from the first day of the month succeeding the date of the warrant."

Warrants were issued under this act between July 13, 1895, and April 30, 1897, to the amount of $100,000. Warrants numbered 1 to 4, inclusive, for $50 each, were issued on July 13, 1895; No. 5, for $900, on August 6, 1895, and No. 6, the warrant in this action, for $54.90, was issued on August 19, 1895. There has come into the state normal school fund from the sale of lands granted to the state for normal schools since 1895 the sum of $7,000, which is sufficient to pay the interest on warrants 1 to 6 inclusive, although not sufficient to pay the interest on all the warrants issued upon said fund. No part of this money has been paid out as interest or principal on any of the warrants, or otherwise, or invested as a permanent fund; nor has any part of this money been received as interest or income from said land grant or the proceeds thereof. The treasurer refuses to pay the interest upon relator's warrant for two principal reasons: (1) That the proceeds arising from the sale of normal school lands constitute a permanent fund, the interest or income only of

which may be appropriated in support of said normal schools, and that the act of 1895, *supra,* is in contravention of the enabling act, because it undertakes to appropriate the proceeds themselves; (2) that no appropriation has been made for the payment of interest upon the warrants in question, or any of the warrants issued by authority of said act.

A determination of the first question involves the construction of the act of Congress admitting the state into the Union, approved February 22, 1889, and commonly known as the "Enabling Act." The provisions of that act relative to the question under consideration are as follows:

"Sec. 10. That upon the admission of each of said states into the Union, sections numbered 16 and 36 in every township of said proposed states, and where such sections, or any part thereof, have been sold or otherwise disposed of by or under the authority of any act of Congress, other lands equivalent thereto, in legal subdivisions of not less than one-quarter section, and as contiguous as may be to the section in lieu of which the same is taken, are hereby granted to said states for the support of common schools, such indemnity lands to be selected within said states in such manner as the legislature may provide, with the approval of the secretary of the interior: Provided, That the 16th and 36th sections embraced in permanent reservations for national purposes shall not, at any time, be subject to the grants nor to the indemnity provisions of this act, nor shall any lands embraced in Indian, military, or other reservations of any character, be subject to the grants or to the indemnity provisions of this act until the reservation shall have been extinguished and such lands be restored to, and become a part of, the public domain.

"Sec. 11. That all lands herein granted for educational purposes shall be disposed of only at public sale, and at a price not less than $10 per acre, the proceeds to constitute a permanent school fund, the interest of which only

shall be expended in the support of said schools. But said lands may, under such regulations as the legislatures shall prescribe, be leased for periods of not more than five years, in quantities not exceeding one section to any one person or company; and such land shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only."

Section 12 grants fifty sections of unappropriated public lands for the purpose of erecting public buildings at the capital of each state for legislative, executive, and judicial purposes; and § 13 provides that five per centum of the proceeds of sales of public lands within the states, sold subsequent to the admission of the states, shall be paid to the states as a permanent fund for the support of the common schools.

"Sec. 14. That the lands granted to the territories of Dakota and Montana by the act of February 18, 1881, entitled 'An act to grant lands to Dakota, Montana, Arizona, Idaho and Wyoming for university purposes,' are hereby vested in the states of South Dakota, North Dakota and Montana, respectively, if such states are admitted into the Union, as provided in this act, to the extent of the full quantity of seventy-two sections to each of said states, and any portion of said land that may not have been selected by either of said territories of Dakota and Montana may be selected by the respective states aforesaid; but said act of February 18, 1881, shall be so amended as to provide that none of said lands shall be sold for less than $10 per acre, and the proceeds shall constitute a permanent fund to be safely invested and held by said states severally, and the income thereof be used exclusively for university purposes. And such quantity of the lands authorized by the fourth section of the act of July 17, 1854, to be reserved for university purposes in the territory of Washington, as, together with the lands confirmed

to the vendees of the territory by the act of March 14, 1864, will make the full quantity of seventy-two entire sections, are hereby granted in the like manner to the state of Washington for the purpose of a university in said state.  None of the lands granted in this section shall be sold at less that $10 per acre; but said lands may be leased in the same manner as provided in section 11 of this act.  The schools, colleges and universities provided for in this act shall forever remain under the exclusive control of the said states, respectively, and no part of the proceeds arising from the sale or disposal of any lands herein granted for educational purposes shall be for the support of any sectarian or denominational school, college or university.  The section of land granted by the act of June 16, 1880, to the territory of Dakota for an asylum for the insane shall, upon the admission of said state of South Dakota into the Union, become the property of said state."

"Sec. 16.  That 90,000 acres of land, to be selected and located as provided in section 10 of this act, are hereby granted to each of said states, except to the state of South Dakota, to which 120,000 acres are granted, for the use and support of agricultural colleges in said states, as provided in the acts of Congress making donations of lands for such purpose.

"Sec. 17.  That in lieu of the grant of land for purposes of internal improvements made to new states by the eighth section of the act of September 4, 1841, which act is hereby repealed as to the states provided for by this act, and in lieu of any claim or demand by the said states, or either of them, under the act of September 28, 1850, and section 2479 of the revised statutes, making a grant of swamp and overflowed lands to certain states, which grant it is hereby declared is not extended to the states provided for in this act, and in lieu of any grant of saline lands to said states, the following grants of land are hereby made, towit: To the state of South Dakota: For the school of mines, 40,000 acres; for the reform school, 40,000 acres; for the deaf and dumb asylum, 40,000 acres; for

the agricultural college, 40,000 acres; for the university, 40,000 acres; for state normal schools, 80,000 acres; for public buildings at the capital of said state, 50,000 acres; and for such other educational and charitable purposes as the legislature of said state may determine, 170,000 acres; in all 500,000 acres. To the state of North Dakota a like quantity of land as is in this section granted to the state of South Dakota; and to be for like purposes, and in like proportion as far as practicable. To the state of Montana: For the establishment and maintenance of a school of mines, 100,000 acres; for state normal schools, 100,000 acres; for agricultural colleges, in addition to the grant hereinbefore made for that purpose, 50,000 acres; for the establishment of a state reform school, 50,000 acres; for the establishment of a deaf and dumb asylum, 50,000 acres; for public buildings at the capital of the state, in addition to the grant hereinbefore made for that purpose, 150,000 acres. To the state of Washington: For the establishment and maintenance of a scientific school, 100,000 acres; for state normal schools, 100,000 acres; for public buildings at the state capital, in addition to the grant hereinbefore made for that purpose, 100,000 acres; for state charitable, educational, penal and reformatory institutions, 200,000 acres. That the states provided for in this act shall not be entitled to any further or other grants of land for any purpose than as expressly provided in this act. And the lands granted by this section shall be held, appropriated and disposed of exclusively for the purposes herein mentioned, in such manner as the legislatures of the respective states may severally provide."

It will be observed that § 10 grants to each of the states named in the act sections 16 and 36 in every township *"for the support of common schools"*; that § 14 grants to the state of Washington for the purposes of a university, seventy-two sections of land "in like manner"; that is, "the proceeds shall constitute a permanent fund to be safely invested and held by said states severally, and the income thereof be used exclusively for university

purposes"; that § 16 grants to the state of Washington 90,-000 acres of land for the use of the agricultural college, "as provided in the act of congress making donations of land for such purposes; that § 17, in lieu of the grants of land made by § 8 of the act of September 4, 1841, and by the act of September 28, 1850, and § 2479 of the Revised Statutes and in lieu of any grant of saline lands, grants to this state, for the establishment and maintenance of a scientific school, 100,000 acres; for state normal schools, 100,000 acres; for public buildings at the state capital in addition to the grant hereinbefore made, 100,000 acres; for state, charitable, educational, penal, and reformatory institutions, 200,000 acres. "And the lands granted by this section shall be held, appropriated and disposed of exclusively for the purposes herein mentioned, in such manner as the legislatures of the respective states may severally provide."

It is contended by the relator that the last sentence of § 17 contains the only limitation upon the legislature with reference to the disposition of the lands granted for state normal schools, and that the limitation contained in § 11 has reference only to sections 16 and 36 granted by § 10 of the enabling act for the support of *common schools;* and a very plausible argument is made to sustain this contention. But this argument necessarily eliminates § 11 of this act as an independent section of the act, and also limits the general words therein used, namely, *"all lands herein granted for educational purposes,"* to mean all lands in § 10 granted for common-school purposes. If congress intended § 11 to be only a limitation to § 10, and not apply to the whole act, it was very unfortunate in the use of words to express that intention, even if the making of § 11 an independent section was an inadvertence. But, taking the section as we find it, an independent section, in con-

nection with the general words used, it seems conclusive
to our minds that congress intended to make it refer, not
only to the preceding section, but to the whole act, and
that the words *"herein"* and *"educational purposes"* were
used advisedly, and refer to all lands granted for such
purposes in the whole act. It is true that, with this con-
struction placed upon § 11, the provision found in § 14,
as follows, "None of the lands granted in this section shall
be sold at less than $10 per acre, but said lands may be
leased in the same manner as provided in § 11 of this act,"
was not necessary. But this provision was evidently in-
serted to avoid the possibility of a construction that uni-
versity lands might be sold, under provisions of the act of
1854, at less than $10 per acre. The clause in § 17, as
follows, "And the lands granted by this section shall be
held, appropriated and disposed of exclusively for the
purposes herein mentioned, in such manner as the legisla-
tures of the respective states may severally provide" refers
to the *manner* of holding and of appropriating and of
disposing of the lands, and must be construed with refer-
ence to the limitations contained in § 11 as to lands granted
for educational purposes. The manner of the disposition
or the sale of such lands, and the manner of the hold-
ing or the investment of the proceeds, and the appropria-
tion of the interest or income, is subject to the limitations
contained in § 11 of the act. The states of North Dakota,
South Dakota, and Montana have all placed the above
construction upon the grant of lands for normal schools by
adopting constitutional provisions declaring the proceeds
of such lands a permanent fund. See Consitiution, North
Dakota, art. 9, § 159; Constitution, South Dakota, art. 8,
§ 7; Constitution, Montana, art. 11, § 12. We think this
construction accords with the general policy of the federal

government towards educational institutions named in the enabling act. It does no violence to any of the provisions of the act, and conduces to the permanency of the normal schools. If we are correct in this construction of the enabling act, it follows that the act of the legislature of 1895 is void, in so far as it attempts to appropriate the proceeds of the lands granted for normal schools instead of the interest and income thereof, and that the treasurer cannot be compelled to pay out any part of the funds derived from the sale of the lands for either principal or interest on the warrant in question. *Romaine v. State,* 7 Wash. 215 (34 Pac. 924).

This conclusion may work a hardship upon the holders of warrants issued under the act of 1895, who have in good faith given to the state value therefor; but the state in justice ought to, and no doubt will, make provision for the payment of the warrants thus issued.

Entertaining these views, it is unnecessary to discuss other questions presented.

The writ is therefore denied.

FULLERTON, C. J., and HADLEY and DUNBAR, JJ., concur.