## STATE EX REL. HUCKFELDT v. STATE BOARD OF SCHOOL LAND COMMISSIONERS et al.
### (No. 696.)

PUBLIC LANDS—SCHOOL LANDS—GRANTS BY UNITED STATES TO THE STATE—LEASES BY STATE—CONSTITUTIONAL LAW.

1. The Constitution declaring that the state "agrees.to accept the grants of land heretofore made, or that may be hereafter made by the United States to the state, for educational purposes, for public buildings and institutions, and for other objects, with the conditions and limitations that may be imposed by the act or acts of Congress, making such grants," *held*, that whether or not such declaration might properly be held equivalent to a provision expressly declaring the legislature to be restricted in the enactment of laws for the disposal and leasing of lands granted by the conditions and limitations imposed by the grants, it is at least a solemn engagement on the part of the state that such conditions and limitations shall be observed by its laws.

2. So far as the manner of disposing of or leasing the lands granted to the state by the United States is prescribed by the terms of the grant, the state having by its Constitution accepted the grant with the conditions and limitations imposed thereby, it is bound by its contract to dispose of or lease the lands only in the manner prescribed by the terms of the grant, though it may adopt additional regulations not inconsistent with the grant or the limitations therein expressed.

3. By the Act of Admission the United States granted to the state certain lands for educational purposes, it being prescribed in said act that "said lands may, under such regulations as the legislature shall prescribe, be leased for periods of not more than five years, in quantities not exceeding one section to any one person or company." *Held*, that an act of the legislature requiring or authorizing a contract to be made leasing any of said school lands for a longer period than five years would violate the terms of the grant, and therefore exceed the power of the state and its legislature, though the state may lease any of such lands repeatedly for a period not exceeding five years, and successively to the same person, under proper legislative regulations; and the mere fact that a second or subsequent lease is made to a prior lessee of the same land will not constitute a violation of the terms of the grant.

4. The lack of power in the state to enter into a contract leasing school lands for a period more than five years would prevent it also from accomplishing the same purpose by a covenant of renewal in a lease for five years allowing no discretion on the part of the state, except to readjust the rent upon the basis of a new appraisement from time to time.

5. The statute (sec. 613, Comp. Stat. 1910) entitling a lessee of state lands to a renewal of his lease for five-year periods, aggregating 20 years, did not give a lessee of *school lands* granted to the state by the Act of Admission a vested right to a renewal, since a construction of the section granting such vested right would render the section void to that extent as violating the condition upon which the school lands were granted to the state, viz: that such lands may be leased for periods of not more than five years.

6. Where it is sought by mandamus to compel the state, or the board vested with authority in the premises, to renew a lease of school lands in a manner which would violate the terms and conditions of the grant upon which the lands were acquired, the principle is not applicable that the question of the violation of the grant can be raised only by the United States, the grantor, however applicable that principle might be under other circumstances.

[Decided March 26, 1912.]                    (122 Pac. 94.)

ORIGINAL proceeding in mandamus.

The action was instituted in the Supreme Court on the relation of John Huckfeldt for a writ of mandamus to compel the State Board of School Land Commissioners to issue to him a lease of school lands in renewal of a former lease, the right of renewal being based upon the provisions of section 613, Compiled Statutes, 1910, (Laws, 1903, Ch. 78, sec. 16). Heard on demurrer to petition and alternative writ. The material facts are stated in the opinion.

*W. E. Mullen* and *C. W. Burdick,* for relator.

Prior to 1903 there was but one state land board, and all lands were referred to in the statutes as state lands. By an act of 1903, following the Constitution in that respect, two separate land boards were created, viz: a school land board (Comp. Stat. 1910, sec. 602), and a state land board (Id.,

sec. 603). The sections of the law now in effect and bearing upon this controversy are a part of the act of 1903, with the exception of section 615, Compiled Statutes, and are included in Chapter 51 of the Compiled Statutes of 1910. These sections should be considered and construed together in order to determine the legislative intent. (France v. Connor, 3 Wyo. 445, 27 Pac. 569; In re Moore, 4 Wyo. 981, 31 Pac. 980; People v. Dolan, 5 Wyo. 245, 39 Pac. 752.) After providing for two separate boards, the act of 1903 refers to the lands under the jurisdiction of each board in a general way as "state lands," but it was clearly intended that the administrative features of the act should cover both state and school lands and lands granted to the state for other purposes. At any rate the duties of both boards with respect to leasing and renewing leases is set forth in section 12 of the act of 1903, as amended in 1905, now section 609 of the Compiled Statutes. Section 613 expressly provides that the lessee named in any lease of state lands, or his assigns, shall be entitled to a renewal thereof every five years, covering a total period of 20 years, with a provision for re-appraisement. The relator's assignor was granted a lease May 11, 1907, which was assigned to the relator December 16. 1908, and which assignment was accepted and recognized by the defendant board. At the time said lease was granted section 613 was in effect, and it is in effect now. A lease of state lands is a contract, and where such a contract is made pursuant to the existing law, the law is a part of the contract. (15 Ency. Law, 1040; Edwards v. Keazey, 96 U. S. 601; U. S. v. Murphy, 82 Fed. 898; Lawrence v. Miller, 2 N. Y. 252; Goodale v. Fenner, 27 O. St. 432.) Subsequent legislation cannot impair the obligation of contracts. (Wyo. Const. Art. I, sec. 35.) The obligation of a contract consists in its binding force on the party who makes it, and this depends on the laws in existence when it is made. These laws are necessarily referred to in all contracts and form a part of them as a measure of the obligation. (McCracken v. Howard, 2 How. (U. S.) 608.) The re-appraisement

provided for in section 613 is the procedure prescribed in
section 609, as both sections were incorporated in the act of
1903, and the relator's application for a renewal stated that
it was made pursuant to both sections. Auction bidding be-
tween applicants does not apply where an applicant has ac-
quired a right to a lease by virtue of any statute of the state.
(Comp. Stat. sec. 609.) The lands in question were re-
appraised pursuant to section 609, the rentals fixed by the
defendant board, and plaintiff accepted said appraisement,
tendered payment, and requested a renewal lease. No dis-
cretion is vested in the board to refuse such renewal, or to
make a lease to another applicant in a case like this. The
duty of the board is fixed by statute, and performance may
be required by mandamus. (State ex. rel. Harrison v.
Board, 10 Wyo. 413.)

As to the land in question the board seems to have acted
according to its interpretation of the force and effect of sec-
tion 615, Compiled Statutes, enacted in 1909. In this, it is
contended, the board was in error. Section 615 must be
construed to operate prospectively and to control in cases
where land is open to original applications, and not where
renewal rights have attached. It cannot operate to impair
vested rights or the obligation of contracts of lease made
prior to its enactment. (State v. McPeak, (Neb.) 47 N. W.
691; State v. Thayer, (Neb.) 64 N. W. 700; Stansey v.
Cather, (Neb.) 123 N. W. 318; Morgan v. Ins. Co., (Neb.)
87 N. W. 145; State v. Commissioners, 4 Wis. 432; Blum
v. Fristoe, (Tex. Cr.) 47 S. W. 658; Fletcher v. Peck, 6
Cranch, 87; Cooley's Const. Lim. (6th Ed.) 328-29.) The
doctrine of renewal rights conferred by statute was recog-
nized by this court, (Cooper v. McCormick, 10 Wyo. 379, 69
Pac. 301.) and this court has held that original proceedings
would lie in mandamus to enforce lease renewal rights.
(State v. Board, 10 Wyo. 413.)

The defendant board is without authority to insert a "sub-
ject to a sale" clause in a renewal lease coming within the
provisions of section 613. While the land boards have power

to sell state or school land whenever deemed advisable, such power does not exist where renewal rights have attached. There were no contest proceedings instituted by the other applicant for the lands in question. Even if a contest could have been properly entertained, the board could not decide a question of fact involving property rights of this character in the absence of a contest brought in the manner prescribed by the statute and the rules of the board, and the introduction of evidence.

It is not necessary that a right of renewal should be written in the lease. The authorities which will be cited by defendant with reference to the necessity of a provision for renewal in a lease where a renewal right is claimed will be found to be cases relating to private persons, and not involving public property governed by statutory law. We find nothing in the act of admission bearing upon the question here involved except the clause restricting the term of a lease to five years, under such regulations as may be prescribed by the legislature. That clause is not in conflict with the state Constitution or statutes, for the reason that our legislation has not provided lease terms in excess of five years. The right here claimed is not affected by the provision in the lease requiring the lessee to yield up the premises at the expiration of the term or upon cancellation of the lease, for that provision does not constitute a waiver of renewal rights conferred by law. (Alexander v. Griswold, 17 N. Y. Supp. 522; 18 Id. 950; Scott v. Wasson, 2 O. Dec. 460; Rich v. Keyser, 54 Pa. 86; Paige v. DePuy, 40 Ill. 506; Fabri v. Bryan, 80 Ill. 182; Associates v. Howland, 5 Cush. 214.) In leases made between private persons renewal options are always provided for by a special clause, and are not affected by the common covenant to yield up at the expiration of the term. It was never intended that a covenant to yield up the premises at the expiration of the term should operate as a waiver of renewal rights under state land leases, and it is clear that it was not so intended in the case of the lease in controversy, for several reasons: (1)

This clause may be found in all state leases, including those where a positive right of renewal is granted in case of the reclamation of the land. (2) Renewal rights of state leases have always been regulated by statute. (3) This clause was in the lease involved in the Harrison case wherein a writ of mandamus was directed. (10 Wyo. 413.) (4) To hold such covenant to be a waiver would conflict with Rule 3 of the Land Boards, advising the public as to renewal rights. (5) The school land board evidently does not itself construe the surrender clause to be a waiver, since it has adopted another form of lease containing an express waiver of renewal rights, said form being expressly intended for use where it is intended to cut off a right of renewal. But if the surrender clause was intended to cut off the renewal right it cannot affect a right established by law. (Stansey v. Cather, 123 N. W. 318.) This is not a suit against the state, but a proceeding in mandamus against state officers for the performance of a public duty.

The petition is sufficient although it does not set forth a copy of the lease, for it states the legal effect of the lease by proper averments. (Comp. Stat., secs. 4405, 5064-5065; Ins. Co. v. Kahn, 4 Wyo. 372.) The waiver of the right to renew would be a matter of defense. The petition shows no such waiver. A petition is good on demurrer unless it totally fails to state a cause of action. (Ins. Co. v. Kahn, supra.) The lease in question was for five years, and therefore not objectionable under any possible construction of the clause relied upon in the Act of Admission. Under that clause leases may be made "under such regulations as the legislature may prescribe for periods of not more than five years." That is precisely what the legislature has done. It has provided for five year lease periods. A power to prescribe regulations means a power to establish rules of management or government. (Gibbons v. Ogden, 9 Wheat. 186.) Congress only has the power to enforce the conditions of the grant of lands to the state, either by revocation thereof, or by other suitable action in a case of a clear vio-

lation of conditions. A third party has no authority to enforce such conditions when the government does not complain of a breach. (Emigrant Co. v. Adams County, 100 U. S. 69; Godwin v. Davis, 74 Miss. 742, 21 So. 764; Barrett v. Brooks, 21 Ia. 144; Audubon County v. Page Co., 40 Ia. 460; Reiggold Co. v. Allen, 42 Ia. 697; Nichols v. Oregon Co., 135 Fed. 234.).

*D. A. Preston,* Attorney General, for defendants.

The petition is insufficient. It fails to set forth either the covenants or conditions of the lease claimed to have been made and a renewal of which is here sought. A petition in mandamus must show a clear right on the part of the relator to have the act performed. (Klokke v. Stanley, 109 Ill. 192; Patton v. Sellars, 179 Ill. 170.) While it is true that the land boards are permitted by statute to lease certain lands and to renew leases, the statute neither states the terms of the lease nor furnishes any form therefor, and the boards seem to be at liberty to incorporate therein such covenants and conditions as may seem to be wise and proper, not in violation of the terms of the statute. Although the statute may in terms give a right to renewal such right may be expressly waived by the terms of the lease itself. The lease in question may contain a covenant that the lessee will at the expiration of the term of five years yield up the premises, and that would constitute a waiver.

The term "state lands" where it appears in section 613 does not include nor apply to lands granted by Act of Congress to the state for educational purposes. The statute provides for two land boards, one of them being a board for the control of school lands. Where "state lands" are used in section 3 of Article XVIII of the Constitution they were intended to include all lands granted and belonging to the state other than school lands. Prior to 1903 the legislature had not provided for a board to control the school lands, and up to the session of 1903 the words "state lands" whenever used in connection with public lands referred to lands other than those granted for educational purposes. Chapter 78,

Laws of 1903, in many of its sections refers to its "Boards";
but section 10 of the chapter provides that the state land
board may appoint an agent for the appraisal of state lands.
As that board can only act concerning lands other than those
granted for educational purposes, it necessarily follows that
the lands referred to in section 10 must be construed to
mean lands other than school lands.   In section 12 of that
chapter reference is made to the boards leasing state lands,
the duties of each board having in the previous section been
clearly defined.   Hence "state lands" in that section desig-
nate all lands owned by the state.   It therefore appears that
whether the term "state lands" when used in the statute
means all of the public lands of the state or only those
granted for educational purposes or those granted for other
purposes can be determined only by reference to the context
of the section or the chapter in which they occur.   It is to be
presumed that the legislature in enacting a statute acted with
a full knowledge of the constitutional scope of its power.   (36
Cyc., 1135.)   To say that by the use of the words "state
lands" in section 613, Compiled Statutes, 1910, it was in-
tended to include all lands granted for educational purposes
is to accuse the legislature of attempting to do an act for-
bidden by the Constitution, which instrument has accepted
the grant of such lands with the conditions and limitations
imposed by the granting act.   (Const., Art. XVIII, sec. 5.)
If section 613 includes school lands then a lease granted
under that section with an absolute right of renewal cover-
ing such lands would be a contract for a period longer than
five years.   (Ranlet v. Cook, 44 N. H. 512; Hart v. Hart,
22 Barb. 606.)   The Nebraska cases cited as to the renewal
of school land leases are not in point for they do not bear
upon the question here under consideration, and for the fur-
ther reason that in the Act of Congress granting school
lands to Nebraska there was no provision regulating the term
for which they might be leased.   The contract which the
relator contends was made by the original lease would be
virtually a lease for a term of 20 years.   Such a lease, in

view of the terms and conditions of the grant and the effect of the acceptance thereof by the state, would be void so far as it would relate to lands granted for educational purposes.

Where a statute operates as a grant of public property, or the relinquishment of public interest, that construction should be adopted which will support the claim of the government rather than the other party. (Slidell v. Grandjean, 111 U. S. 412; Wisc. C. R. Co. v. U. S. 164 U. S. 190; Newton v. Mahoning County, 100 U. S. 548.) It is not our contention that section 613 is not now in force as to lands other than those granted for educational purposes, but we do contend that the legislaure had no authority to enact that or any other statute giving a preference or absolute right to renewal in the case of the lease of school lands. If a grant admits of two interpretations, one of which would render it inoperative, and the other would give it effect, the latter, if reasonable, should be adopted. (Mills v. St. Clair Co., 8 How. (U. S.) 569.)

Section 615, Compiled Statutes, 1910, requires the board of school lands commissioners to give a preference right in all cases in leasing the school lands to persons who are resident citizens and tax payers of the state holding title to lands upon which they reside nearest to the school lands applied for. This section is plain and unambiguous, and its enforcement is easy. It is the only statute in existence that gives the school land board express authority to grant leases to school lands other than section 602 creating the board. If section 613 applied to school lands it was repealed by section 615. (Boisdore v. U. S., 8 How. (U. S.) 113; Presco v. Grant, 98 U. S. 398.) Whether the land board is with or without authority to insert in a renewal lease coming within the provisions of section 613 a clause making the land subject to sale is not involved in any proper consideration of this case. In the lease which was executed to the relator's assignor is a clause providing that the lessee will yield up the premises at the expiration of the term or the cancellation of the lease. The lease designating the term with certainty, and there

being no preference right of renewal written therein, the
lease terminates pursuant to the contract, May 1, 1911. (2
Taylor on Landlord and Tenant, 465; 1 Id., sec. 278; 18
Ency. Law, (2nd Ed.) 353, 393; Ellis v. Paige, 1 Pick. 43;
Clapp v. Paine, 18 Me. 264; Vanatta v. Brewer, 32 N. J.
268; Trustees v. Jennings, 40 S. C. 168; Kew v. Trainor,
37 N. E. 223.)

But we contend that in view of the conditions upon which
these lands were granted as to the term for which leases
might be made, and the acceptance of such conditions by
the Constitution they cannot be leased for periods exceed-
ing five years.   (18 Ency. Law, (2nd Ed.) 685; 3 Scam.
(Ill.) 585.)

POTTER, JUSTICE.

This is an original proceeding in this court for a writ of
mandamus to compel the State Board of School Land Com-
missioners and the Commissioner of Public Lands to grant
and issue to the relator a lease in renewal of his former
lease covering a certain section of the school lands of the
state.   An alternative writ was issued and the cause was
heard upon a general demurrer to the petition and alterna-
tive writ.   The material facts appearing from the petition
are as follows:

On May 11, 1907, a lease of the land in question was
executed and issued to one Charles Hansen for the period
of five years from May 1, 1906.   Said lease was duly as-
signed to the relator on December 16, 1908.   Prior to the
expiration of that lease the relator applied for a renewal
under the provisions of section 613, Compiled Statutes,
1910, subject to the right of re-appraisement allowed a lessee
upon renewal under the provisions of that section and sec-
tion 609.   Prior to the expiration of the lease one White-
head also applied for a lease of the land, claiming a pref-
erence right under section 615, Compiled Statutes.   On Sep-
tember 8, 1911, the defendant board re-appraised the land
and fixed the annual rental at seventy-five dollars.   On that
date also the board denied relator's application for renewal

and ordered that a lease be granted to said Whitehead, stating as a reason therefor that the said Whitehead was residing upon lands owned by him nearest to the land applied for. Thereupon the relator notified the board that he would accept a renewal lease at the rate of rental fixed upon the board's re-appraisement, and tendered the amount of the rent for the first year, but the offer was refused.

The provisions of section 613, under which the right of renewal is claimed were enacted in 1903 (Laws 1903, Ch. 78, sec. 16.); and are as follows:

"The lessee named in any lease of state lands, or his assigns shall, at the expiration of the term of said lease, be entitled to a renewal thereof, not exceeding an area of four sections, and to subsequent renewals thereof every five years, for a total period of twenty years, provided, that at each renewal period said lands may be re-appraised in the manner hereinbefore specified; the said appraisement to be based upon the value of the lands, irrespective of any cultivation or improvements, made or placed thereon by the lessee."

The Whitehead application and the order granting a lease to him appear to have been made pursuant to the provisions of section 615, Compiled Statutes, enacted in 1909 (Laws 1909, Ch. 70, sec. 1), reading as follows:

"Preference shall in all cases be given to applications for leases of either state or school lands to persons who are resident citizens and taxpayers of the state, and applications made by citizens of the state who hold title to lands upon which they reside nearest to any state or school lands applied for, shall be given a preference right over all other applicants, to lease the same at such rental as the board shall deem equitable and just, and such preference to resident title holders shall extend to an area of lands equal to twice the area of lands to which such resident citizen holds title, not however, to exceed six hundred and forty acres of school or educational institutions' lands, or a total of two thousand five hundred and sixty acres of state and school lands. Where two or more applicants claim preference by

reason of holding title to lands nearest to the lands applied for, the boards shall grant leases upon a basis as nearly equitable as possible. Applicants claiming the preference right accorded by this section must set forth such claims at the time of making their applications, or subsequent thereto, and prior to the expiration of any prior lease on the lands covered by such application."

Counsel for relator contend that section 613, as the law in force when the relator's lease was made, constituted the law of the contract, and that if the provisions of section 615, subsequently enacted, are to be construed so as to deprive the relator, or any other lessee in the same situation, of the right of renewal, the same are to that extent void, as impairing such contractual and vested right; and, to avoid that effect of section 615, that it should be construed to be inapplicable where a prior lessee is entitled to a renewal of his lease under section 613. On the other hand, the Attorney General contends that, as the Act of 1903, which contained the provisions of section 613, distinguished lands granted for the support and benefit of public schools from other state lands, and vested the control thereof respectively in different boards, school lands are not necessarily included in the term "state lands," and that the provision of section 613, declaring that a lessee named in any lease of "state lands" shall be entitled to a renewal, and to successive renewals covering a period of twenty years, may properly and ought to be construed so as not to apply to school lands. He further contends that a construction of section 613 which would entitled a lessee of school lands, after the expiration of a lease for five years, to have his lease renewed, would render the section void, so far as it applied to school land leases, for the reason that it would in that respect violate the terms and conditions upon which the school lands were granted to the state by the Act of Admission, as well as the provision of the Constitution accepting such grant.

The contention that a statute providing that a lessee of school lands shall be entitled to a renewal of his lease,

after the expiration of one lease period of five years, would be void for the reason suggested, and that if section 613 so provides it is void to that extent, will be first considered, for if it be necessary to sustain that contention the other questions relating to the power of the state in leasing other state lands will not be important to this controversy, and should not be considered for that reason, as well as for the further reason that the board having control of other state lands is not a party here.

We take it to be conceded that the school lands were granted to the state by the Act of Admission. Section 5 of that act provides as follows:

"That all lands herein granted for educational purposes shall be disposed of only at public sale, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools. But said lands may, under such regulations as the legislature shall prescribe, be leased for periods of not more than five years, in quantities not exceeding one section to any one person or company; and such land shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes."

Section 1 of Article XVIII of the State Constitution declares: "The State of Wyoming hereby agrees to accept the grants of land heretofore made, or that may be hereafter made by the United States to the State, for educational purposes, for public buildings and institutions, and for other objects, and donations of money with the conditions and limitations that may be imposed by the Act of Acts of Congress, making such grants or donations." Whether or not this might properly be held equivalent to a provision expressly declaring the legislature to be restricted in the enactment of laws for the disposal and leasing of the lands granted by the conditions and limitations imposed by the grants, it is at least a solemn engagement on the part of the state that such conditions and limitations shall be observed

by its laws. And so far as the manner of disposing of or leasing the lands granted is prescribed by the terms of the grant, the state is certainly bound by its contract to dispose of or lease the lands only in that manner, though it may no doubt adopt additional regulations not inconsistent with the grant or the limitations expressed therein; and it is given express authority to do so in the matter of leasing school lands by section 5 of the Act of Admission above quoted. Hence an act of the legislature violating that contract would be void on that ground if for no other reason. (Fenn v. Kinsey, 45 Mich. 446, 8 N. W. 64; State v. Springfield Township, 6 Ind. 83; Bradley v. Case, 3 Scam. Ill. 585; Springfield v. Quick, 22 How. U. S. 56, 16 L. Ed. 256; Davis v. Indiana, 94 U. S. 792, 24 L. Ed. 320; State ex rel. v. Mathews, 150 Ind. 597, 50 N. E. 572.) Fenn v. Kinsey, supra, was a case involving a congressional grant of certain lands to the State of Michigan to aid in the construction of railroads, where some of the lands had been conveyed by the state for a purpose held not to be authorized by the terms of the grant. The court say:

"At the time when the act of 1877 (Pub. Acts 1877, No. 132) was passed it is beyond question that the state was bound by the terms of the congressional grant, which were formally accepted by the law of 1857, (Laws 1857, No. 126) to dispose of none of these lands except for the specific purposes named in the Act of Congress. As the United States reserved a right to all lands not legally disposed of under the trust, and under the grant the state itself had no power to divert them, the Act of 1877 was in direct violation of that clause of the Constitution of the United States which declares that no state shall pass any law violating the obligation of contracts."

In Bradley v. Case, supra, the Supreme Court of Illinois upheld the power of the state to sell the sixteenth section in each township which had been granted for "the use of the inhabitants of such township for the use of schools," but in the opinion it was said: "If the Act of Congress, which,

being agreed to by the State Convention, formed the compact between the state and the general government, had provided that the lands aforesaid should not be sold, or had made any specific provision as to the manner in which they should be disposed of, then the question would have been settled. But that compact only provides, in general terms, that the lands 'shall be granted to the State for the use of the inhabitants of such townships, for the use of schools.' Whether they shall be leased for a term of years, rented annually, or sold, and the proceeds in either case applied according to the compact, to the use of schools, appears to me to be a proper subject of state legislation."

In Davis v. Indiana, supra, it seems to have been assumed that the validity of a statute of Indiana, which made provision for a certain disposition of the proceeds of school lands, depended upon whether or not it violated the act of Congress granting the lands to the state, for, although the statute was held to be valid, the court say: "We are asked by counsel to decide that the Supreme Court of Indiana, in thus construing the statute, is in error; and to make a construction of it, by which it will conflict with the Act of Congress, and be, therefore, void, merely that one officer may have distribution of the fund instead of another. Our convictions should be very clear before we do this, even if we have a right to do it, which may admit of some question. Fortunately we concur in the view of these laws taken by that court."

The Act of Congress under which North Dakota, South Dakota, Montana and Washington were admitted as states contained a section numbered 11 similiar to section 5 of the act admitting this state, providing among other things that the proceeds of the sale of lands granted for educational purposes shall constitute a permanent school fund, the interest of which only shall be expended in the support of said schools. An act was passed by the Legislature in each of the states of Washington, Montana and North Dakota whereby the proceeds of the sales of the lands granted for the pur-

poses of a Normal School were appropriated to the payment of bonds issued to provide funds for the erection of Normal School buildings.  In Washington and North Dakota it was held that the aforesaid provision of section 11 of their enabling act applied to the normal school grant.  And in Washington the act of the legislature was held void on the sole ground that in appropriating the proceeds of sales to the payment of the bonds it violated the provision of the enabling act authorizing the interest only to be expended in support of schools.  The court say:

"If we are correct in this construction of the enabling act, it follows that the act of the Legislature of 1895 is void, in so far as it attempts to appropriate the proceeds of the lands granted for normal schools instead of the interest and income thereof."  (State ex rel. Houston v. Maynard, 31 Wash. 132, 71 Pac. 775.)

The act of North Dakota was held void also upon the ground that it violated certain provisions of the Constitution to the same effect as that contained in section 11 of the enabling act, but the court say:

"Perhaps it is not necessary to state that by the acceptance of the grant for educational purposes—and it is with that grant we are concerned in this case—a trust was created, the character of which was fixed by the terms of the grant.  By the mere acceptance of the grant the honor of the state was pledged to the observance of the obligation of the trust; that is to maintain the permanency of the trust fund and to use the interest only for the support of the several schools to which it was dedicated."  (State ex rel. Board &c. v. McMillan, 12 N. D. 280, 96 N. W. 310.)

The Supreme Court of Montana, while not agreeing with the Supreme Courts of Washington and North Dakota respecting the meaning and application of section 11 of the enabling act, held the act of that state void on the ground that it was in conflict with a provision of the State Constitution requiring the normal school funds to be invested as prescribed by law, and the interest together with rents from

leased normal school lands to be devoted to the maintenance of such school. And that provision of the Constitution was held to be valid as against the objection that it took from the legislature the authority granted it by the enabling act to prescribe the manner in which the normal school lands should be held, appropriated and disposed of. Although the case in Montana was not decided upon the ground that the act violated the terms or conditions of the grant, we think from the opinion that the court is to be understood as recognizing the controlling effect of a condition or limitation in the grant whenever found to be applicable. The case went to the Supreme Court of the United States and was there affirmed. (State ex rel. Haire v. Rice, 33 Mont. 365, 83 Pac. 874; Id., 204 U. S. 291, 27 Sup. Ct. 281, 51 L. Ed. 490.)

Referring now to the relevant terms of the grant we observe that, following the provision requiring that all lands "herein" granted for educational purposes shall be disposed of only at public sale, it is provided: "But said lands may, under such regulations as the Legislature shall prescribe, be leased for periods of not more than five years." There seems to be no uncertainty in this provision, and it is doubtful if any attempt to explain it could make it clearer. It is needless to consider whether, without any provision in the grant expressly permitting the lands to be leased, the state would possess unlimited power to lease them, but it may be assumed that the state would in such case have that power. The provision was, however, inserted authorizing the lands to be leased, but only for periods of not more than five years, thus clearly limiting the power to lease the lands granted for educational purposes, and the grant was accepted with that limitation. That an act of the Legislature requiring or authorizing a contract to be made leasing such lands for a longer period than five years would violate the aforesaid provision of the grant, and therefore exceed the power of the state and its Legislature, is beyond question. And, clearly, without violating the compact completed upon its

acceptance of the grant with the limitations and conditions imposed thereby, the state cannot at any one time enter into a contract leasing any such lands for a period longer than five years.

It cannot be doubted that the state may lease any of the school lands repeatedly for a period not exceeding five years, and successively to the same person, under proper legislative regulations, so that the mere fact that a second or subsequent lease is made to a prior lessee of the same land will not constitute a violation of the terms of the grant. And we are not prepared to say that the land board may not lawfully be authorized to consider and act upon reasonable grounds of preference in passing upon two or more applications for the same land. But that is quite a different matter from a contract or statutory obligation, secure against change by subsequent legislation, to grant and execute a lease covering a period exceeding the limitation upon the power of the state in that particular, and that upon no other consideration than the agreed rental.

It is argued that the statute in question (section 613) complies strictly with the above mentioned limitation expressed in the grant by providing for five year leases. If, however, it confers upon the lessee, as contended, an absolute right, at the expiration of one five year lease, to a renewal thereof, and to subsequent renewals every five years, covering a total period of twenty years, and is to be read into every lease controlled by its provisions as a part of the contract, then, notwithstanding that a new lease is required to be executed at the end of each five year period, the lands covered by such contract of lease would in effect be leased for a period exceeding five years, subject only to the lessee's option to surrender the lands, either by failure to demand a renewal or otherwise, and the provisions for re-appraisement and fixing the amount of the future rent. This, we think, would be a clear evasion of the limitation expressed in the Act of Admission and accepted by the Constitution, for the state, by the original contract, would become obligated, if the conten–

tion of relator's counsel be correct, to renew and thereby continue the lease at the option of the lessee, subject only to the conditions above mentioned, for the period prescribed in the statute. The effect of such a contract would not seem to differ materially, so far as the question under consideration is concerned, from a contract leasing the lands for twenty years, but giving the lessee an option to surrender at the end of any five year period.

The lack of power in the state to enter into a contract leasing school lands for a period more than five years would prevent it also, we think, from accomplishing the same purpose by a covenant of renewal in a lease for five years, allowing no discretion on the part of the state, except to readjust the rent upon the basis of a new appraisement from time to time. (18 Am. & Eng. Ency. L. 685; Moore v. Clench, 1 Ch. Div. (Law Rep.) 447; Watson v. Hemsworth Hospital, 14 Ves. Jr. 324; Hart v. Hart, 22 Barb. 606; Clark v. Barnes, 76 N. Y. 301, 32 Am. Rep. 306; Ranlet v. Cook, 44 N. H. 512, 84 Am. Dec. 92.) It was declared in the Constitution of New York that "no lease or grant of agricultural land for a longer period than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid." Under that provision it was held that a lease for twelve years, with a covenant of renewal for twelve years longer if the lessor shall live, and a further covenant to continue the renewals every twelve years so long as the lessor shall live, was good for the first twelve years, but that the covenants for renewal were void. (Hart v. Hart, supra.) And in Clark v. Barnes, supra, it appeared that two leases were executed between the same parties at the same time, one for eight years, and the other for twelve yars from the date of the expiration of the first. Both leases were held void as violating the said constitutional provision. The court said: "But the claim is that, as neither of these leases is for a longer period than twelve years, the Constitution has not been violated. But both leases were executed, in pursuance of a written agreement, at the same

time, upon the same consideration, as parts of the same transaction, and were upon precisely the same terms; and they may, therefore, be construed together, as if they were contained in the same instrument. If the leasing had been by one instrument, for these two terms, it would not be disputed that, within the meaning of the Constitution, there would have been a lease for twenty years; and the effect is the same, and the construction must be the same, under the circumstances disclosed here, although the agreement is witnessed by two instruments instead of one. Otherwise the whole policy of the constitutional provision could be defeated, by cutting a very long term up into successive short terms, by the use of separate instruments, all executed at the same time. It is apparent that there was the purpose to evade this constitutional provision."

In Watson v. Hemsworth Hospital, supra, where a claim was made for the renewal of a lease which would carry it beyond the period authorized by statute, the court said: "In this case no such contract could legally be made; for the hospital is restrained by its constitution from granting leases for more than twenty-one years; and it has been determined, that a body under such restraint cannot any more covenant for a renewal of the term, than originally grant a lease, exceeding the prescribed limits," citing Lidiard v. Foach, 2 Vern. 410; Taylor v. Dulwich College, 1 P. Will. 655.

Our attention is called to the case of Cooper v. McCormick, 10 Wyo. 379, 69 Pac. 301, in which this court considered and sustained the right of a prior lessee of a school section to a renewal of his lease under another section of the statute, which provided that the power of the land board to refuse to renew, or lease, to sell the lands at the expiration of a lease, or again to lease to other parties than the original lessee, shall not apply, whenever the original lessee, or his assigns, shall have, during the period of his lease or prior thereto, reclaimed the same by irrigation, and shall have provided suitable ditches for its full and complete reclamation, and secured an adequate and perpetual water supply for the

land; and that in such case the original lessee shall have the right to successive renewals for a total period of twenty years; and the succeeding·section which provided that upon the expiration of such a lease or leases all water rights, which shall have become appurtenant to the lands leased, shall be- come the property of the state. That case came to this court upon appeal from the determination of a contest between two applicants, and it does not appear that the question here presented or any question as to the validity of the statute was raised, suggested or considered. And we do not now determine or consider the question whether a statute like the one before the court in that case would exceed the power of the state under the limitation aforesaid, or whether such ? statute might be sustained upon other considerations.

It is further argued that whether a statute or contract of the state relating to the disposition or leasing of the lands granted to the state by the United States violates the pro- visions of the grant, is a question that can be raised only by the United States. However applicable such a principle might be under other circumstances, it cannot, we think, properly be held to apply where, as in this case, it is sought by mandamus to compel the state, or the board vested with authority to exercise the powers granted, to act in such a way as to violate the terms and conditions of the grant upon which the lands were acquired, and under a statute which the board has refused to follow on the ground that it is void, so far as it requires such action, because in conflict with the limitation upon the power of the state expressed in the grant and accepted by the provisions of the Constitution of the state. (See Payne v. Staunton, 55 W. Va. 202, 46 S. E. 927, 2 Am. & Eng. Ann. Cas. 74 & Note p. 81; Huntington v. Worthen, 120 U. S. 97, 7 Sup. Ct. 469, 30 L. Ed. 588; Van Horn v. State, 46 Neb. 62, 64 N. W. 365.)

For the reasons stated, and without considering any other question that has been suggested, the peremptory writ will be denied.

BEARD, C. J., and SCOTT, J., concur.