The STATE of Wyoming, Ed Herschler, Thyra Thomson, James B. Griffith, Stan Smith and Lynn Simons, as members of the Board of Land Commissioners, James B. Griffith, as State Auditor and Howard M. Schrinar, as Commissioner of Public Lands, Appellants (Defendants),

v.

PENNZOIL COMPANY and Marathon Oil Company, Appellees (Plaintiffs).

No. 86–211.

Supreme Court of Wyoming.

April 5, 1988.

A. G. McClintock, Atty. Gen., Michael L. Hubbard, Senior Asst. Atty. Gen., Vicci M. Colgan, and Clinton D. Beaver, Asst. Attys. Gen., for appellants.

William T. Schwartz, Schwartz, Bon, McCrary & Walker, Casper, Bruce F. Kiely and Thomas J. Eastment, Baker & Botts, Washington, D.C., Richard L. Edmonson, Houston, Tex., for appellee Pennzoil.

Morris R. Massey, Brown, Drew, Apostolos, Massey & Sullivan, Casper, Morris G. Gray and Kirby J. Iler, Casper, for appellee Marathon.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The single issue to be resolved in this case is whether the State of Wyoming (State), the lessor of an oil and gas lease entered into through the Board of Land Commissioners (Board), is entitled to royalty on payments made by a purchaser from the lessee who was required to make minimum payments for gas even though the gas was not received. The district court held that royalties were not due on these payments which were attributable to what is described in the industry as a "take-or-pay" clause. We are in accord that royalties are not due on such payments, and we affirm the judgment of the trial court.

Both parties articulate the issue in an argumentative way. The State, together with the individual members of the Board, the State Auditor, and the Commissioner of Public Lands, set forth the issue in their brief in this way:

"I. Did the district court err in its interpretation of the lease that royalties are not due on advance payments for gas?"

The appellees, Pennzoil Company (Pennzoil) and Marathon Oil Company (Marathon) assert this issue in their brief:

"I. Did the district court properly grant summary judgment to the appellees by declaring that the State of Wyoming, as lessor under the subject lease, has no royalty interest in take-or-pay obligations arising under gas sales contracts be-

tween the appellees/lessees and their gas purchaser?"

The crux of the matter is whether, under the oil and gas lease which was entered into, production of gas is essential to any requirement of royalty to the State.

The parties agree that the facts are not in dispute. Marathon and Pennzoil each acquired, through assignment, a 50% working interest in an oil and gas lease executed by the State, through the Board, as lessor. Section 2 of that oil and gas lease provides, in pertinent part:

"(d) ROYALTIES. The royalties to be paid by lessee are: (i) on oil, one-eighth of that produced, saved, and sold from said land, the same to be delivered at the wells or to the credit of lessor into the pipe line to which the wells may be connected; (ii) on gas, including casinghead gas or other hydrocarbon substance, *produced from said land saved and sold or used off the premises* or in the manufacture of gasoline or other products therefrom, the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the *amount realized from such sale.*

\* \* \* \* \* \*

"For royalty purposes on gas and natural gasoline the value shall be as approved by the lessor \* \* \* and in no event shall the price for gas, or natural gasoline, be less than that received by the United States of America for its royalties from the same field.

\* \* \* \* \* \*

"(g) MONTHLY PAYMENTS AND STATEMENTS. Unless the time of payment is otherwise extended by the Commissioner of Public Lands, [the lessee agrees] to make payment on or before the twentieth (20) day of the calendar month *succeeding the month of production and removal and sale of oil and gas from said land,* and to furnish sworn monthly statements therewith showing in detail the quantity and quali-

ty of the production * * *." (Emphasis added.)[1]

Marathon and Pennzoil drilled a well on the lands included in the lease which produces natural gas. The lessees have paid royalties to the State only on the gas produced and sold, based on the amounts realized from the sale of that gas.

Colorado Interstate Gas (CIG) is a customer of Marathon and Pennzoil. CIG, pursuant to separate contracts with Marathon and Pennzoil, agreed to buy gas produced by Marathon and Pennzoil from the land included within the lease in issue. These respective contracts each contain a "take-or-pay" clause. Pursuant to the clause, CIG is required to receive a specified amount of gas each year.[2] If CIG fails to receive the specified amount of gas each year, it is required to pay to Marathon and Pennzoil a sum which represents the difference between the specified amount of gas to be received and the amount actually received. The contracts, in addition, include a makeup provision,[3] pursuant to which CIG receives credits for payments made under the take-or-pay clause with respect to any gas received in the succeeding five years, so long as the minimum amount has been received for any year in which the credit is claimed.[4] On September 26, 1983, the Board sent an audit letter to Pennzoil and Marathon demanding un-paid royalties attributable to payments under the take-or-pay clause. Marathon agreed to pay the requested royalties, but Pennzoil refused and brought a declaratory judgment action against the Board. Then Marathon filed its own declaratory action against the Board seeking, as additional relief, the return of any monies it had paid to the Board as royalties for the take-or-pay payments. These actions were consolidated, and both sides moved for summary judgment on the sole question of whether or not the royalty payments were due. Briefs were filed; a hearing was held; and the district court granted the motions for summary judgment of Pennzoil and Marathon. It held that royalty payments were not due on the amounts realized from the take-or-pay payments. It is from that order granting judgment to Pennzoil and Marathon that the Board appeals.

The Board argued to the district court, and maintains on appeal, that the pertinent lease provision is ambiguous and that an analysis of the intent of the parties results in a construction of the lease to the end that royalty payments should be made on payments received for future production as well as those received for actual production. The Board then contends that the take-or-pay payments which have been made or shall become due under the con-

---

1. This oil and gas lease has been reviewed by this court previously in *State v. Moncrief,* Wyo., 720 P.2d 470 (1986). In that case, the same royalty clause was in issue and required interpretation. The question concerned the value, under the terms of the lease, of gas actually produced and sold.

2. A take-or-pay contract is:
"A contract whereby a purchaser agrees to take a minimum quantity of oil or gas over a specified term at a fixed price (or at a fluctuating price which cannot be reduced below a specified level) or to make minimum periodic payments to the producer even though oil and gas is not being delivered to the purchaser." 8 H. Williams & C. Meyers, Oil and Gas Law at 979 (1987).
Such contracts are discussed in the same work at 4 H. Williams & C. Meyers, Oil and Gas Law § 724.5 at 659–661 (1986).

3. Make-up gas is:
"(1) Gas that is taken in succeeding years having been paid for previously under a TAKE–OR–PAY CLAUSE in a GAS PUR-CHASE CONTRACT. The contract will normally specify the number of years after payment in which the purchaser can take delivery of make-up gas without paying a second time." 8 H. Williams & C. Meyers, Oil and Gas Law at 539 (1987).
The function of this clause is discussed at 4 H. Williams & C. Meyers, Oil and Gas Law § 724.5 at 665 (1985).

4. After the decision in this case by the district court, Marathon and Pennzoil negotiated with CIG with respect to the enforceability of the take-or-pay clauses. They agreed that CIG was relieved from any failure to take the specified amount in previous years. The dispute between CIG and Marathon and Pennzoil with respect to the enforceability of the take-or-pay clauses resulted in Marathon returning any payments made by CIG under Marathon's take-or-pay clause. Pennzoil advised that it had not received any payments from CIG under its take-or-pay clause.

tract between CIG and Marathon and Pennzoil are made for future production of gas and that a royalty paid in advance is appropriate. Marathon and Pennzoil repeat their argument here, which was successful in the district court, that the pertinent provision in this lease entered into by the Board is clear, not subject to interpretation, and provides for royalty payments only in the event of actual production.

An oil and gas lease is a contract, and the general principles invoked for the construction of contracts and their interpretation, if necessary, applies. *Wolff v. Belco Development Corporation*, Wyo., 736 P.2d 730 (1987); *State v. Moncrief*, Wyo., 720 P.2d 470 (1986). These general principles have been related a number of times, and we need allude to only those which are pertinent in this case. See e.g., *State v. Moncrief*, supra; *Cheyenne Mining & Uranium Company v. Federal Resources Corporation*, Wyo., 694 P.2d 65 (1985); *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463 (1980). The purpose of interpretation or construction of any contract is to ascertain the true intent of the parties. *Wolff v. Belco Development Corporation*, supra; *State v. Moncrief*, supra; *Cheyenne Mining & Uranium Company v. Federal Resources Corporation*, supra. Unless the terms of the contract are ambiguous, the language used in the contract expresses and controls the intent of the parties. *State v. Moncrief*, supra; *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, supra; *Kuehne v. Samedan Oil Corporation*, Wyo., 626 P.2d 1035 (1981).

It is correct, as the Board asserts, that the language of a contract is to be construed within the context in which it was written. In so doing, the court may look to the surrounding circumstances, the subject matter and the purpose of the contract. *Cheyenne Mining & Uranium Company v. Federal Resources Corporation*, supra; *Dawson v. Meike*, Wyo., 508 P.2d 15 (1973); *Houghton v. Thompson*, 57 Wyo. 196, 115 P.2d 654 (1941); *Pacific–Wyoming Oil Company v. Carter Oil Company*, Wyo.,

31 Wyo. 314, 226 P. 193 (1924); *Energy Oils, Inc. v. Montana Power Company*, 626 F.2d 731 (9th Cir.1980), quoting *Liberty National Bank & Trust Company v. Bank of America Trust & Savings Association*, 218 F.2d 831 (10th Cir.1955). The purpose of examining the context within which the contract was drawn, however, is limited to ascertaining the intent of the parties at the time the agreement was made. The context cannot be invoked to contradict the clear meaning of the language used, and those extraneous circumstances do not justify a court in proceeding "to insert therein a provision other than or different from that which the language used clearly indicates, and thereby, in effect, make a contract for the parties." *Snow v. Duxstad*, 23 Wyo. 82, 147 P. 174, 184 (1915). See also *Arnold v. Mountain West Farm Bureau Mutual Insurance Company, Inc.*, Wyo., 707 P.2d 161 (1985); *Adobe Oil & Gas Corporation v. Getter Trucking, Inc.*, Wyo., 676 P.2d 560 (1984); *McCartney v. Malm*, Wyo., 627 P.2d 1014 (1981).

In order to justify examination of the contextual circumstances, the Board contends that the language of the lease is ambiguous and extrinsic evidence is necessary to determine the intention of the parties. Ambiguity in the lease would justify the examination of extrinsic evidence in order to arrive at the intention of the parties. *State v. Moncrief*, supra; *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, supra. The ambiguity which justifies examining extrinsic evidence must exist, however, in the language of the document itself. It cannot be found in subsequent events or conduct of the parties, matters which are extrinsic evidence. *State v. Moncrief*, supra; *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, supra. The suggestion that one should examine extrinsic evidence to determine whether extrinsic evidence may be examined is circuitous. Certainly, the proposition urged by the Board that we turn to the contracts entered into between CIG and Marathon and Pennzoil, respectively, to interpret the

terms of the lease is inappropriate insofar as it is urged to structure an ambiguity.

The district court in this case found that the lease was not ambiguous. Ambiguity in a document is a question of law which we must determine independently from the decision of the district court. *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, supra. Our independent examination results in the same conclusion as that reached by the district court; this lease is not ambiguous with respect to when royalty payments are due.

The language of the lease is that royalties are to be paid on gas "produced from said land saved and sold or used off the premises." In resolving ambiguity, we afford these terms their usual and accepted meaning unless it is clear that the parties intended some contrary meaning. *Snow v. Duxstad*, supra; *Monsanto Company v. Tyrrell*, Tex.Civ.App., 537 S.W.2d 135 (1976). The Board argues that both words, "produced" and "sold," are ambiguous in this lease and the Board's intent was that they should have a broad construction which would include all proceeds relating to this gas whether or not actual production and sale had occurred. Pennzoil and Marathon do not concur in that assertion of intent.

The parties to a contract are entitled to define its terms in a manner different from the common or established meaning. *Snow v. Duxstad*, supra. One court has invoked this proposition to determine that take-or-pay payments are within the federal statutory definition of production. See *Diamond Shamrock Exploration Company, et al. v. Hodel*, No. 86–537, decided January 23, 1987, U.S.D.C., E.D.La. (Opinion and Order not reported in F.Supp.) [Available on WESTLAW, 1987 WL 5986] (federal lease royalty payments due from take-or-pay payments under the definition of production provided in 43 U.S.C. § 1331(m) (1986)). Cf. *Mesa Petroleum Company v. United States Department of Interior*, 647 F.Supp. 1350 (W.D.La.1986) (determining that the same definition of production was not sufficient to include take-or-pay payments under a federal

lease). Wyoming has no statutory definition of production, and the term is not specially defined in the lease. Consequently, we are satisfied that no meaning other than the common established meaning was intended pursuant to our examination of the entire lease. See *State v. Moncrief*, supra; *Snow v. Duxstad*, supra.

■ The word "production" has an established legal meaning when used in a royalty or habendum clause of an oil and gas lease. "Production" requires severance of the mineral from the ground. *Union Oil Company of California v. Touchet*, 229 La. 316, 86 So.2d 50 (1956); *Monsanto Company v. Tyrrell*, supra; *Gulf Oil Corporation v. Reid*, 161 Tex. 51, 337 S.W.2d 267 (1960); *Saturn Oil and Gas Company v. Federal Power Commission*, 250 F.2d 61, 22 P.U.R.3d 123 (10th Cir. 1957), cert. denied 355 U.S. 956, 78 S.Ct. 542, 2 L.Ed.2d 532 (1958); *Mesa Petroleum Company v. United States Department of Interior*, supra; *Energy Oils Company, Inc. v. Montana Power Company*, supra.

Subsection 2(g) of the lease demonstrates that the parties intended the general meaning of "production." Pursuant to that provision, the lease royalty payments are not due until the twentieth day of the calendar month following the month of "production and removal and sale of oil and gas from said land * * *." This language manifests the proposition that royalties are due only upon physical extraction of the gas from the ground and its removal. The same clause continues with the provision that Marathon and Pennzoil are required to supply the Board with sworn monthly statements "showing in detail the quantity and quality of the production * * *." Such a statement cannot be furnished in the absence of the extraction of the gas from the land. Within the instrument, the term "production" has no use other than the established meaning requiring physical extraction of the mineral. There is nothing within this lease to manifest an ambiguity. If there were any arguable ambiguity in this aspect of the lease, any doubt would have to be resolved against the Board as the drafter of the lease. *Kelliher v. Her-*

*man*, Wyo., 701 P.2d 1157 (1985); *Goodman v. Kelly*, Wyo., 390 P.2d 244 (1964); *McGinnis v. General Petroleum Corporation*, Wyo., 385 P.2d 198 (1963).

The Board attempts to find support for its argument by reliance upon language found in *Cheyenne Mining & Uranium Company v. Federal Resources Corporation*, supra, 694 P.2d at 72. In that case, we said with respect to the phrase "mined and produced," that actual mining was immaterial so long as a promise to develop the mineral lease was present as well as sanctions for failure to develop. The only factual similarities between the lease found in *Cheyenne Mining & Uranium Company v. Federal Resources Corporation*, supra, and the lease presented in this case are in coincidental language. The unique situation presented in that case and the determination of the intent of the parties as expressed in the language of the lease examined in its entirety do not make it persuasive authority in this instance. The lease made by the Board manifests the intent of the parties that physical extraction of the gas from the leased tract is required before royalty payments can become due.

The Board next argues that the requirement for the gas to be sold is an ambiguous term in the lease and that a proper interpretation would lead to the conclusion that this requirement is satisfied by the sale contracts between Marathon and Pennzoil and CIG. Usually, a "sale" is understood to require the passing of title manifesting the change in ownership. See § 34–21–206(a), W.S.1977. In the absence of title to the property, one cannot lawfully sell it. In Wyoming, the right created by an oil and gas lease is a profit á prendre, connoting the right "to search for oil and gas and if either is found, to remove it from the land, * * *." *Denver Joint Stock Land Bank of Denver v. Dixon*, 57 Wyo. 523, 122 P.2d 842, 847, 140 A.L.R. 1270 (1942); *Boatman v. Andre*, 44 Wyo. 352, 12 P.2d 370, 373 (1932). The Board does not contend that Marathon and Pennzoil attempted in any way to sell their interest in the lease. The only transaction that occurred between CIG and Marathon and

Pennzoil, respectively, was an agreement to sell gas produced from the lease. Neither Pennzoil or Marathon could acquire any interest (title) in the gas which they could transfer to CIG until it was produced and severed from the land. It could not be produced and severed until it had been brought to the surface. *Denver Joint Stock Land Bank of Denver v. Dixon*, supra; *Young v. Young*, Wyo., 709 P.2d 1254 (1985). The language of the lease, considered in its entirety, demonstrates that the intention of the parties was that royalty payments would be due only after the gas was sold or used, and no sale could be identified unless the gas was severed from the leased land.

In presenting this argument, the Board again relies on statements from *Cheyenne Mining & Uranium Company v. Federal Resources Corporation*, supra, in an attempt to avoid the intent expressed in the language of the lease. We said in that case that the transfer of " ' * * * the *exclusive right* to explore, develop, *mine, extract and remove* * * * and thereafter to retain all right, title and interest in and to all said severed minerals' " was a sale of the interest which, under the terms of the lease in that case, entitled the lessees to a portion of the profit derived from the sale. *Cheyenne Mining & Uranium Company v. Federal Resources Corporation*, supra, 694 P.2d at 71. We do not perceive that the unique situation present in the facts of that earlier case is duplicated in this instance. The Board does not contend, indeed it could not, that in this instance there has occurred an actual sale of the leasehold interest such as was found in *Cheyenne Mining & Uranium Company v. Federal Resources Corporation*, supra. Reliance upon that authority does not lead to a conclusion that these parties intended that the royalties would be due before there was an actual sale or an actual use of this gas after physical extraction.

The Board then urges, however, that there are other provisions manifesting an intent that royalty payments are due on any amount realized from any transaction relating to the oil and gas from the leased

tract. The specific provisions suggested by the Board are the lessor approval clause and the federal floor clause, encompassed in this lease, which were construed in *State v. Moncrief,* supra. The Board claims that these clauses are relevant to a determination of whether royalty payments are due on take-or-pay payments. The pertinent part of the lessor approval clause is, "the value shall be as approved by the lessors." The Board contends that it would not approve any royalty which did not include take-or-pay payments. The federal floor clause relied upon says, "in no event shall the price for gas * * * be less than that received by the United States of America for its royalties from the same field." In invoking this provision, the Board contends that, since the federal government has required federal lessees to make royalty payments for take-or-pay payments under some federal leases, the same should be true under this lease. The Board has not provided any evidence in the record that the federal government was receiving royalties from take-or-pay payments relating to tracts in the same field as the lease involved in this case. More directly, the Board is straining the language of these two clauses to justify its position. As we said in *State v. Moncrief,* supra, these provisions are relevant to the determination of the value of the royalty to be paid. There is nothing to indicate that these provisions were intended by the parties to affect the time when royalty payments would be due. They do not contradict in any way the language of the royalty clause providing that payments are due only after production or sale or, alternatively, use of the gas.

Next, the Board invokes a common sense and good faith premise for interpreting the lease. They urge that common sense requires a conclusion that the Board would not enter into a contract which permitted the lessees to receive proceeds in relation to the gas and foreclosed the lessor from any right to a portion of those proceeds. We accept the proposition that we are to interpret the contract in the light of common sense and good faith. *Wolff v. Belco Development Corporation,* supra; *Marathon Oil Company v. Kleppe,* 407 F.Supp.

1301 (D.Wyo.1975), aff'd 556 F.2d 982 (10th Cir.1977). Common sense and good faith do not demand a conclusion, however, that the Board would never enter into a contract which, in hindsight, is not the best arrangement that could have been made. The Board simply is requesting that this court rewrite the contract to encompass provisions that it would have included after learning of the take-or-pay payments. No rule of law justifies that resolution by this court.

As a final argument, the Board invokes the proposition that the leased land is trust property dedicated to educational institutions in Wyoming. See *State v. Moncrief,* supra; *Mayor v. Board of Land Commissioners,* 64 Wyo. 409, 192 P.2d 403, reh. denied 64 Wyo. 430, 195 P.2d 752 (1948); *State ex rel. Huckfeldt v. State Board of School Land Commissioners,* 20 Wyo. 162, 122 P. 94 (1912). As trustee, the Board reminds us of its duty to obtain the largest possible return from any leases entered into of the trust property. See *State v. Moncrief,* supra. The Board then urges that, in its role as trustee, it would not enter into any lease in which it did not receive full value for its interest. This contention also is a simple request to the court that the lease be rewritten to adjust to this proposition. As we have previously set forth, we cannot do that.

█ As our precedent dictates, we have examined and interpreted this lease in accordance with the general principles applicable to the interpretation of contracts. We agree with the district court that this lease is not ambiguous. By its clear terms, it manifests the intention of the parties that royalty payments were to be made only in the event of production from the lease, that is, after physical extraction of the gas from the land and its sale or use. No argument is presented that either Marathon or Pennzoil have failed to develop the lease in a reasonably commercial manner. The appropriate remedy for such a claim would be an action for breach of the implied covenant of a reasonable development. See *Wolff v. Belco Development Corporation,* supra. Certainly, the Board

could have included a provision requiring that the proceeds of take-or-pay payments be subject to its royalty clause. This lease does not contain a provision like that, and there is nothing else in the lease to indicate the intention that such royalty payments are required.

The Board contends that take-or-pay payments are advance payments for gas. Pennzoil and Marathon argue that this essentially is a penalty provision in the gas sales contract. We recognize that those contracts between Marathon and Pennzoil and CIG encompass at least one scenario in which payments would be required and no gas would be received in exchange for those payments. It is not necessary for us to resolve this issue, however, in view of our conclusion that there has been no production and sale of this gas to trigger the requirement to pay royalties.

The judgment of the district court is affirmed.