**GERARD J.W. BOS & COMPANY, INC., and Trustmark National Bank, Plaintiffs–Appellants,**

**v.**

**HARKINS & COMPANY, and Transcontinental Gas Pipe Line Corporation, Defendants–Appellees.**

**No. 88–4892.**

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1989.

Rehearing and Rehearing En Banc Denied Oct. 30, 1989.

---

Norman B. Gillis, Jr., Norman B. Gillis, III, Gillis & Gillis, McComb, Miss., for plaintiffs-appellants.

Thomas W. Tardy, III, Raymond P. Albrecht, Jackson, Miss., for Transcontinental Gas Pipe Line.

Glenn Gates Taylor, C. Glen Bush, Copeland, Cook, Taylor, Bush, Jackson, Miss., for Hawkins & Co.

Before GEE, JONES, Circuit Judges, and HUNTER,* District Judge.

GEE, Circuit Judge:

In 1976, plaintiff Gerard J.W. Bos & Co., Inc. (Bos) leased mineral interests in certain lands located in Jefferson Davis County, Mississippi, to various parties, reserving against its lessees the right to receive royalty payments from the sale of production. Two years later, at the request of defendant Harkins and Company (Harkins), all of the mineral interests within the boundaries of Section 17 of Greens Creek Field in Jefferson Davis County were force-integrated into a single drilling unit, with Harkins designated as unit operator and thus vested with the exclusive right to drill for and produce oil and gas from the unit.[1]

Bos's interests lay within Section 17. After the forced integration, Harkins voluntarily assumed the additional role of marketing agent for the unit. As marketing agent, Harkins negotiated a long-term, take-or-pay contract with defendant Transcontinental Gas Pipeline Corporation (Transco) under which Transco agreed to purchase all of the gas produced by the unit at then prevailing market prices. The evidence established that Transco was aware that Harkins was not the sole owner of the interests in the unit. By 1986 gas prices at the well head had dropped substantially from the 1978 level. Consequently Transco wished to renegotiate the 1978 take-or-pay contract. In April of 1986, in return for a one-time $7.3 million payment to Harkins individually, Harkins agreed to cancel the

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. Harkins appears to have been the holder of numerous leases within the unit, although it was not the lessee of Bos.

1978 contract. Bos alleges that as a result of this action the well on the unit was shut down, causing Bos's royalty income to be permanently lost.

Following the cancellation of the Harkins–Transco contract, a dispute developed between Harkins and the minority interest lessees. These lessees, including eight of the eleven owners of Bos's leases, sued Harkins, alleging that they were third party beneficiaries of the Transco contract and should have been recognized as "sellers" in the 1986 reformed contract between Harkins & Transco. *See Alford, Et Al. v. Harkins & Co., Et Al.*, Civil Action No. H–86–0124(R). Bos attempted unsuccessfully to intervene in this suit on behalf of itself and other royalty-interest owners. In April 1988 the *Alford* suit was settled, and the plaintiff's claims were dismissed with prejudice.

■ After the settlement—one apparently not to Bos's liking—it brought this action in state court. Defendants removed the suit to federal court and moved for summary judgment. The district court granted the motion, dismissing Bos's suit. On appeal Bos contends that because of Harkins' status as operator of a force-integrated drilling unit it owed a fiduciary duty to other royalty owners such as Bos, the lessors of other lessees. Further, Bos contends that Harkins owed a fiduciary duty to such royalty owners under the common law of trusts and agency and that Transco is liable to Bos for interfering with Harkins' performance of that duty.

Under Mississippi conservation statutes, owners of separate tracts within an established "drilling unit" may voluntarily agree to integrate their interests and establish a single drilling unit. Miss.Code Ann. § 53–3–7. Additionally, "[w]here ... such persons have not agreed to integrate their interests, the board may, for the prevention of waste or to avoid the drilling of unnecessary wells, require such persons to integrate their interests and to develop their lands as a drilling unit." *Id.* Such forced integration "... shall be upon terms and conditions that are just and reasonable, and will afford the owner of each tract the opportunity to recover or receive his just and equitable share of the oil and gas in the pool...." *Id.*

The interests in Section 17 were force-integrated pursuant to this statute. The order issued by the Oil & Gas Board forming the drilling unit stated that "... in order to both properly and efficiently recover the gas ... and *to protect the rights of petitioner and the royalty owners....*" the well should be drilled at a specific location. The order further stated that drilling the well at the stated location would "... prevent waste, [and] *protect the co-equal and correlative rights of all parties* and owners under the proposed unit ... and will *insure to each lease owner and royalty owner* the opportunity to ... recover his fair share.... [of the gas]" The order specifically stated that all interests, including royalty interests, were force pooled.

Bos contends that the order placed Harkins in a position—fiduciary or otherwise—with respect to the royalty owners which prevented Harkins from profitting at their expense, citing *Young, et al. v. West Edmond Hunton Lime Unit*, 275 P.2d 304 (Okla.1954), app. dismissed, 349 U.S. 909, 75 S.Ct. 600, 99 L.Ed. 1245 (1955). In *Young* the Oklahoma Supreme Court held that "[t]he unit organization with its operator stands in a position similar to that of a trustee for all who are interested in the oil production either as lessees or royalty owners." *Id.* at 309. The district court in the instant case held that *Young* was inapplicable because it "involved fieldwide utilization, not single-unit pooling such as is involved here." Bos contends that the district court erred in distinguishing *Young* on this ground because, under Mississippi law, "pooling", "integration" and "utilization" have virtually identical meanings. *See, e.g., Superior Oil Company v. Foote*, 214 Miss. 857, 59 So.2d 85 (1952) and *Superior Oil Company v. Beery*, 216 Miss. 664, 63 So.2d 115 (1953). While we conclude that there is little distinction between fieldwide utilization and single-unit pooling, we agree that *Young* is inapplicable to this case.

We first note that *Young* involved Oklahoma oil and gas law, not Mississippi law. Therefore, *Young* is, at best, persuasive authority for interpreting Mississippi law. Second, in *Young* the plan of utilization specifically stated that "[t]o the extent that any person entitled to take ... any portion of the unit production shall fail to take ... [it] ... when produced, the unit operator, ... is authorized to market and sell ... at not less than market price ... the portion ... not so taken...." In other words, the order or plan in *Young* authorized the defendant to operate the unit *and to market the product.*

By contrast, the order in this case authorized the defendant to operate the unit but the order did not authorize the defendant to market the product. That duty was voluntarily assumed by the defendant, presumably with the consent of the other leases, the holders of operating interests. This is a crucial distinction. Assuming, without deciding, that the forced integration and appointment of Harkins as operator imposed on it a fiduciary duty with respect to the royalty owners, that duty is limited by Harkins' authority under the state's order. In this case, that authority does not include marketing. Therefore, no fiduciary duty with respect to marketing arose from the forced integration.

 Alternatively, Bos contends that the common law of trusts and agency imposed a fiduciary duty on Harkins with respect to the royalty owners. Under Mississippi law a third party beneficiary may enforce rights under a contract. A mere incidental beneficiary, however, acquires no rights under a contract. *Ivey's Plumbing and Electric v. Petrochem Maintenance*, 463 F.Supp. 543 (N.D.Miss.1978).

> To achieve the status of a third-party beneficiary and thereby avoid the requirement of contract privity, the Supreme Court of Mississippi has expressly held that the plaintiff must show that 'the condition which is alleged to have been broken was placed in the contract [between third parties] for his direct benefit.' *Id.* at 549. (Citations omitted.)

In this case Bos failed to show that the contract between Harkins and Transco was intended for Bos's direct benefit. Therefore, Bos is a mere incidental beneficiary and has no rights under the Harkins/Transco contract.

Finally, and in the absence of the assistance of any relevant precedent under Mississippi law, we are unable to envision by what process Bos, the owner of a non-operating royalty interest, acquired rights against persons such as Harkins, who were not its lessees. Having leased to an operator, reserving such rights against it as Bos thought fit, it seems to us that it is to that operator Bos should look in such circumstances as these. For this and the foregoing reasons, therefore, we conclude that the trial court properly dismissed Bos's claims against Harkins.

Given that Harkins owed no duty to Bos, it follows that Transco cannot be liable to Bos for interfering with the relationship between Bos and Harkins. The judgment of the district court is

AFFIRMED.