ROYE REALTY & DEVELOPING, INC.,
an Oklahoma corporation, Appellee,

v.

R.D. WATSON and Dorothy
Watson, Appellants,

v.

ARKANSAS LOUISIANA GAS
COMPANY, A DIVISION OF
ARKLA, INC., Appellees.

No. 76848.

Supreme Court of Oklahoma.

Sept. 10, 1996.

As Corrected Sept. 12, 1996.

Rehearing Denied Feb. 6, 1997.

Mandate Issued Jan. 26, 1998.

Eric S. Gray, Thomas P. Gorensen, and Gregory F. Pilcher, Roberts, Gray, Gorensen & Moriarty, Oklahoma City, for Appellee, Roye Realty and Developing, Inc.

James R. Eagleton, Eagleton, Eagleton & Harrison, Tulsa, for Appellants, R.D. Watson and Dorothy Watson.

Graydon Dean Luthey, Jr., J. Kevin Hayes, Richard T. McGonigle and Mark Banner, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, for Appellee, Arkla Energy Resources, a Division of Arkla, Inc.

Mart Tisdal, Cornell & Tisdal, Clinton, Amicus Curiae, for Oklahoma Mineral Owners Association.

J. Michael Medina, Holliman, Langholz, Runnels & Dorwart, Tulsa, and Bland Williamson and J. Randolph, Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Amicus Curiae, for Oklahoma Independent Petroleum Association.

Robin Stead, D.F. Heath, Jr., Stead & Associates, P.C., Norman, Amicus Curiae for National Association of Royalty Owners and the Oklahoma Chapter of the National Association of Royalty Owners.

Mark D. Christiansen, Crowe and Dunlevy, Oklahoma City, and Brenton B. Moore, Tulsa, Amicus Curiae, for Oklahoma–Kansas Mid–Continent Oil & Gas Association.

Gregg R. Renegar, Tom M. Moore, James W. Bruce, Kornfeld, Franklin, Renegar & Randall, Oklahoma City, and Tom J. Ruble, Ruble & Bozarth, Taloga, Amicus Curiae, for

George R. Eckles, Jr. on behalf of Appellants R.D. and Dorothy Watson.

HARGRAVE, Justice.

Certiorari to Court of Appeals, Oklahoma Division IV, to review an unpublished opinion of the Court of Appeals. The issue addressed in the present matter is whether, under Oklahoma law, royalty owners may be entitled to share in money paid by purchaser to producer in settlement of take-or-pay litigation?

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

Roye Realty & Developing (Roye), the gas producer/lessee, and R.D. and Dorothy Watson (Watsons), the lessors, executed oil and gas leases covering certain lands located in Haskell County. The primary term of the leases extended one year. Roye drilled and initially completed gas wells apparently capable of production in paying quantities within the primary terms of the leases. The royalty clauses of the leases provided for payment of royalties on gas "produced and sold." Roye subsequently entered into a gas purchase agreement with Arkla. This agreement included a take or pay provision which read:

> If Buyer does not receive the annual minimum which Buyer is obligated to receive hereunder during a particular Contract Year, and the annual minimum was available and tendered by Seller for delivery hereunder in accordance with the provisions of this contract, Buyer shall pay to Seller at the price per MMBtu payable hereunder on the last day of the particular Contact Year for a volume (hereinafter for convenience referred to as the "annual shortage") equal to the difference between the volume actually received during the Contract Year and the minimum volume Buyer was obligated to receive during the year. If Buyer thus pays for an annual shortage not actually received, Buyer shall have the right to recoup the volume thus paid for but not received out of future production from any or all wells delivering gas under this contract without further payment...

The Gas purchase contract, specifically the aforementioned take-or-pay clause, was the subject of litigation between Arkla and Roye in *Arkla Energy Resources v. Roye Realty & Developing, Case No. C–86–67,* District Court of Haskell County, Oklahoma, which resulted in a "confidential settlement agreement" dated February 6, 1989, between Roye and Arkla. Since the settlement in that case was confidential, no discovery was allowed by the trial court into the specifics therein. Subsequent to the settlement, a dispute arose between the Watsons and Roye. The Watsons were claiming a share of the proceeds of the settlement under the lease agreement, by virtue of their oil and gas lease. Roye filed the instant suit requesting a declaratory judgment defining the rights and liabilities of the parties under the oil and gas leases. Watsons filed an answer, counterclaim and third-party petition and added the gas purchaser, Arkansas Louisiana Gas Company (Arkla), as a third-party defendant. This answer/counterclaim urged seven grounds for recovery.[1]

Roye and Arkla filed motions for a protective order, claiming that the Watsons were not entitled to receive a copy of the confidential settlement between Roye and Arkla which terminated take-or-pay litigation. This motion was never resolved. Roye and Arkla also filed motions for summary judgment, claiming that they were entitled to a declaration from the court that the Watsons were not entitled to share in the proceeds of the settlement of that take-or-pay litigation. The Watsons also filed a motion for partial summary judgment, claiming that, as a matter of law, they were entitled to share in the settlement proceeds paid by the purchaser to the producer to resolve any breach of the take-or-pay gas purchase contract. The District Court denied the Watsons motion for summary judgment, and granted the Roye and Arkla's motions for summary judgment.

The Court of Appeals summarily reversed the trial court's decision and held that Roye's granting Arkla a right to refuse gas, under the take-or-pay provision, resulted in Roye's

marketing of the gas. The Court of Appeals held that summary judgment was premature, and that the Watsons were entitled to partial summary judgment because they were entitled to royalties based upon the take-or-pay settlement. Finally, the Court of Appeals compelled production of the settlement agreement and vacated the award of attorney fees. Arkla and Roye petition for certiorari. Certiorari granted on this first-impression question.

## THE TRIAL COURT PROPERLY GRANTED ARKLA'S MOTION FOR SUMMARY JUDGMENT

*Title 52 O.S.1991, § 540* reads in pertinent part:

A. The proceeds derived from the sale of oil or gas production from any oil or gas well shall be paid to persons legally entitled thereto, commencing no later than six (6) months after the date of first sale, and thereafter no later than sixty (60) days after the end of the calendar month within which subsequent production is sold. Provided, such payment is to be made to persons entitled thereto by the first purchasers of such production ... The first purchaser shall be exempt from the provisions of this subsection and the owner of the right to drill and to produce under an oil and gas lease or force pooling order shall be substituted for the first purchaser therein where the owner and purchaser have entered into arrangements where the proceeds are paid by the purchaser to the owner who assumes the responsibility of paying the proceeds to persons legally entitled thereto.

See *Seal v. Corporation Commission,* 725 P.2d 278, 295 (Okla.1986).

■ Roye is responsible for paying the royalty, under the gas purchase contract between Arkla and Roye, as well as under the leases with the Watsons. Arkla has already settled the take-or-pay litigation with Roye, and hence, Arkla is not responsible for any

1. These grounds read as follows: 1. breach of contract; 2. failure to pay proceeds from production as required under *Title 52 O.S.Supp. 1989, § 540 (renumbered as § 570.10 of* Title 52 by Laws 1992, c. 190 § 28); *3. breach of fiduciary duty; 4. declaratory judgment; 5. accounting; 6. third party beneficiary; and 7. punitive damages.*

monies due to the Watsons. Therefore, the trial court properly dismissed the action against Arkla as Arkla had satisfied the provisions of § 540.

## AN OVERVIEW OF ROYALTY OWNERS RIGHTS TO TAKE–OR–PAY SETTLEMENTS AS DETERMINED ·BY OTHER JURISDICTIONS.

This is a matter of first impression in the State of Oklahoma. Other jurisdictions that have been faced with this issue have split. Those jurisdictions favoring the producer rely primarily on a strict interpretation of the language in the leases concerning what constitutes a "sale" and "production", while those jurisdictions finding for the royalty owners have adopted a broader "economic benefit" test based on the lessee's implied covenant to market gas and on unjust enrichment theories.

Texas Courts have found in favor of the producer. In *Killam Oil Co. v. Bruni*, 806 S.W.2d 264 (Tex.App.—San Antonio 1991, writ denied), the Texas Court of Appeals—San Antonio, was faced with a royalty clause similar to the case at bar. This clause provided that royalties would be paid on gas produced and sold or used off premises. The Court in *Killam*, adhered closely to the lease contract, and defined "production" as actual physical extraction of the mineral from the soil. Furthermore, the court defined "sold" as actual delivery of the mineral. *Killam* at 267. The court held:

> We hold, as a matter of law, that the Trust is not entitled to royalties on the settlement proceed arising from the take-or-pay provision of the contract between Killiam, Hurd and UTTCO. Therefore, we need not address the Trust's contention as to what the proceed might have represented. This is because under a standard lease, take-or-pay payments do not constitute any part of the price paid for produced

gas, nor do they have the effect of increasing the price paid for the gas that was taken. These payments are made when gas is not produced, and as such, bear no royalty.

*Killam* at 268.[2]

■ The Supreme Court of Wyoming also found in favor of the producer. In *State v. Pennzoil*, 752 P.2d 975 (Wyo.1988), the Wyoming Supreme Court held that production required severance of the minerals from the ground, and that no sale could be made until the minerals were severed. *Pennzoil* at 979–980. The Court strictly construed the royalty clause of the oil and gas lease which provided for royalties payable on "oil, one-eighth of that produced, saved, and sold ...". The royalty owner in that case sought royalty on a recoupable[3] take-or-pay payment made pursuant to a gas contract. The Court in Wyoming concluded that "there has been no production and sale of this gas to trigger the requirement to pay royalties." *Id.* at 982.

In *Diamond Shamrock Exploration Company v. Hodel*, 853 F.2d 1159, 1166–1167 (5th Cir.1988), the Court held that production, as used in the oil and gas industry, means the actual products of an oil·and gas well. The Court went further, opining that "with no production there is nothing to value either by market or otherwise." Furthermore, the Court held that take-or-pay payments "are intended to compensate primarily the producer, not the owner of the minerals, for the risks associated with the development of production." Thus, those courts strictly construing the royalty interest, view take-or-pay payments as a non-sale and hence, not subject to royalty. That case also dealt with recoupable take-or-pay payments. The Court held that "royalties are not due on 'value' or even 'market value' in the abstract, but only on the value of production saved,

---

2. In *Mandell v. Hamman Oil and Refining Co.*, 822 S.W.2d 153 (Tex.App.1991), the Texas Court of Appeals–Houston, also decided a case on the same grounds.

3. Recoupable gas is gas pledged in the settlement of take-or-pay claims, that can be taken at a later time as a result of the payment of settlement

money. Williams and Meyers, *Manual of Oil and Gas Terms*, p. 683 (8th ed. 1991), refer to recoupable gas as makeup gas and define it as "[g]as that is taken in succeeding years having been paid for previously under a take-or-pay clause in a gas purchase contract."

removed or sold from the leased property." *Hodel* at 1165.

Other jurisdictions have held to the contrary. In *Frey v. Amoco Production Co.*, 603 So.2d 166 (La.1992) rehearing denied, the Louisiana Supreme Court answered a Federal Certified Question which asked:

> Whether under Louisiana law and the facts concerning the Lease executed by Amoco and Frey, the Lease's clause that provided Frey a 'royalty on gas sold by the Lessee of one-fifth (⅕) of the amount realized at the well from such sales' requires Amoco to pay Frey a royalty share of the take-or-pay payments that Amoco earns as a result of having executed the Lease and under the terms of a gas sales contract with a pipeline producer. *Frey v. Amoco Production Co.*, 943 F.2d [578] at 578 [ (1991) ], opn. withdrawn, in part, on reh'g ques. certified 951 F.2d 67 (5th Cir.1992) (per curiam)

*Frey* at 170. The Louisiana Supreme Court answered in the affirmative.

The Supreme Court of Louisiana, after recognizing the "fundamental principle that the lease contract is the law between the parties defining their respective legal rights and obligations" observed that they were disinclined to write a mineral lease in pursuit of equity, they were nonetheless cognizant that the terms of a mineral lease are neither intended to, nor capable of, accommodating every eventuality. *Frey* at 172. Additionally, the Court observed:

> When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provision of the contract, but also to whatever law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.

*Frey* at 172.

After finding that the Louisiana Mineral Code was not dispositive of the lessor's right to take-or-pay payments, and that " ... the terms of a mineral lease are neither intended to, nor capable of, accommodating every eventuality," it looked to the leasehold parties' general intent and noted that a mineral lease is a contract in which the lessee is granted the right to explore for and produce minerals and determined that the royalty clause is to be construed in reference to economics and practical considerations underlying oil and gas interests. The Court reasoned:

> [T]he royalty clause is construed not in the abstract but in reference to the economic and practical considerations underlying the royalty interest and with due regard to the relationship between a lessor and a lessee. The lessor-lessee relationship ensues from a synallagmatic contract in which the obligation of each party is the cause of the other. Where royalty is conferred by the lease, royalty is the reason or cause for the lessor to obligate himself thereto. Stated differently, *royalty is the compensation or consideration the lessee pays to the lessor to secure the privilege of exercising the right to explore and develop the property for production of oil and gas.*

> By virtue of the beneficial relationship between lessee and lessor, the former avoids having to pay up front for the privilege of exploration, and the latter, assuming a passive role, is guaranteed participation in any eventual yield accruing from the lessee's entrepreneurial efforts, unconstrained by financial and operational responsibilities. *Inherent in the concept of lease as a bargained-for exchange is the recognition a lessor would not relinquish a valuable right arising from the leased premises without receiving something in return.*

*Frey* at 173.

The Louisiana Supreme Court found that economic benefits accruing from leased land generated solely by virtue of an oil and gas lease, if not expressly negated in the lease, are shared between the royalty owner and the producer according to the agreed royalty percentages. The Court also pointed out that it cannot realistically be claimed that the lessor/royalty interest shares none of the costs of risks of development, and noted that the risks of drainage and defective market forecasts are, for example, risks shared by the lessor/royalty interest. *Frey* at 178.

The Court adopted the principle that:

[A]ny determination of the market value of gas which admits the lessee's arrangements to market were prudently arrived at consistent with the lessee's obligation, but which at the same time permits either the lessor or the lessee to receive a part of the gross revenues from the property greater than the fractional division contemplated by the lease, should be considered inherently contrary to the basic nature of the lease and be sustained only in the clearest of cases.

*Frey* at 173–174, citing *Henry v. Ballard & Cordell Corp.*, 418 So.2d 1334, 1338 n. 10 (La.1982), in which the Louisiana Supreme Court quoted Professor Harrell's [4] contention in Harrell, *Developments in Non–Regulatory Oil & Gas Law*, 30 Inst. on Oil and Gas L. & Tax'n 331, 336 (1979), that a mineral lease is a cooperative venture for the benefit of both parties. The Court then held:

> In light of *Henry*, we conclude an oil and gas lease, and the royalty clause therein, is rendered meaningless where the lessee receives a higher percentage of the gross revenues generated by the leased property than contemplated by the lease. The lease represents a bargained-for exchange, with the benefits flowing directly from the leased premises to the lessee and the lessor, the latter via royalty. An economic benefit accruing from the leased land, generated solely by virtue of the lease, and which is not expressly negated, is to be shared between the lessor and the lessee in the fractional division contemplated by the lease.

*Frey* at 174. Thus the Court held an "economic benefit" resulting from the lease, resulted in royalties due to parties with royalty interests.

The Supreme Court in Louisiana found that the *"amount realized"* language, found in the royalty clause in the lease agreement between the lessor and lessee, encompassed the take-or-pay payment and settlements and thus a royalty was due the lessor on any monies therefrom received. *Frey* at 179–180. The Louisiana Court relied on the royalty clause in determining that a royalty was due on the take-or-pay settlement.

In *Klein v. Jones*, 980 F.2d 521 (8th Cir. 1992) [5], the Court, applying Arkansas law, followed the findings of the Supreme Court of Louisiana in *Frey*.

The Eighth Circuit held:

> We also recognize the Harrell rule, that a lease arrangement is in the nature of a cooperative venture in which the lessor contributes the land and the lessee the capital and experience necessary to develop the minerals for the mutual benefit of both parties, And it follows from that rule that:

> "[A]ny determination[s] of the market value of gas which admits the lessee's arrangements to market were prudently arrived at consistent with the lessee's obligation, but which at the same time permits either the lessor or lessee to receive a part of the gross revenues from the property greater than the fractional division contemplated by the lease should be considered inherently contrary to the basic nature of the lease and be sustained only in the clearest of cases." [6]

Thus, the Eighth Circuit Court of Appeals, applying Arkansas law, applied the teaching of *Frey* when faced with the same issue. The royalty clause in that case stated that royalty would be paid on "gas, casinghead gas, distillate, condensate and other gaseous substance produced from said land and sold . . ." Furthermore, the royalty was to be paid on the *"amount realized"* [7] from such sales. *Klein* at 225.

4. Professor Thomas Harrell, Professor of Oil and Gas Law, Louisiana State University Law Center, Baton Rouge, La.

5. This case was again appealed in *Klein v. Arkoma Prod. Co.*, 73 F.3d 779 (8th Cir.1996). This appeal dealt with how the take-or-pay funds were divided between the parties.

6. *Klein at 531–532.* Quoting Thomas Harrell, *Developments in Non-regulatory Oil & Gas Law*, 30 Institute on Oil & Gas Taxation, 311, 336 (1979)

7. This language is not in the leases held by Roye in which the Watsons are the mineral owners.

## ARGUMENTS ADVANCED BY THE PARTIES AND THE AMICUS CURIAE.

The trial court ruled as a matter of law that the lessors were not entitled to participate in any take-or-pay settlement received by Roye, the lessee. Although the trial judge simply granted summary judgment in favor of Roye and denied the Watsons' motion for partial summary judgment without specifying the reasons therefore, the lessee had argued several reasons why they were entitled to summary judgment. Lessee, Roye, argued in it's motion for summary judgment that it was entitled to summary judgment because the Watsons were not entitled to royalties for gas not produced, that the Watsons were not third-party beneficiaries and that a gas purchase contract is not incorporated into the lease. The Watsons, argued they were third party beneficiaries under the gas purchase contract and that after the settlement of Roye's lawsuit against Arkla, the amount received from the sale of gas significantly dropped and that "[o]n information and belief, Arkla paid Roye an undetermined amount of money for the breach.." and "[i]n return, Roye agreed to lower the gas price and agreed to allow Arkla to recoup the prepayment from future gas produced ..."

On appeal, the Watsons' central argument is that the trial court committed error in not requiring Roye and Arkla to produce the documents pertaining to the settlement agreement on the take-or-pay provisions of the gas purchase contract. The Watsons contend that it was error for the trial court to grant summary judgment without allowing discovery of the settlement to be completed. In support, the Watsons offered no authority. Finally, the Watsons argued that the trial court erred in granting attorney fees to Roye and Arkla.

Roye contends the Watsons agreed that the trial court was to rule on the motions for summary judgment prior to ruling on any other motions, including the motions to compel discovery into the settlement documents. Next, Roye argued that the Watsons conceded there was no issue as to liability, and that their failure to argue liability at the trial court bars any such complaint on appeal. The third argument urged by Roye was that the Watsons did not follow *Supreme Court Rule 15* by failing to support the argument that the Watsons may be entitled to share in take-or-pay settlement proceeds. Roye then answered the unsupported argument by contending that the Watsons are not entitled to royalty for gas not produced, and that the Watsons are not third party beneficiaries. Finally, Roye argued that the trial court properly assessed costs and attorney fees against the Watsons.

Many *amicus curiae* briefs have been filed in the instant matter, both supporting and at odds with the decision reached by the Court of Appeals. In order to give a broad overview of the issues presented in the instant matter these *amicus curiae* briefs will be discussed briefly, broken down by those supporting the producer and those supporting the royalty owner.

The *amicus curiae* on the producer's behalf argue that the jurisdictions that have held that the lessors are entitled to share in take-or-pay settlements are easily distinguishable because the royalty clauses in those cases did not require "production." Furthermore, they argue that take-or-pay payments are not payments for gas, but are rather meant to create a guaranteed minimum cash flow to the producer, shielding the producer from adverse market fluctuations, and providing an inducement to explore and develop gas reserves. Finally, the *amicus curiae* reiterate that the Watsons were not third-party beneficiaries because Arkla and Roye did not intend for them to be beneficiaries under the gas purchase contract.

The *amicus curiae* supporting the royalty owner/lessor contend that the Watsons are not attempting to enforce the royalty clause, but rather the implied covenant to market. Hence, the recovery sought by the Watsons is damages for breach of the implied covenant to market. They further urge that these damages are to be measured by royalties which would have been received, and not the royalties actually generated. They also argue that the purpose of the mineral lease is the mutual economic benefit of both the lessor and the lessee, therefore, by receiving a

take-or-pay settlement, the lessee benefits from the lease while the lessor is denied such benefit. They state that by failing to market the gas as a reasonably prudent operator, the lessee fails to maximize the profits for himself and the lessor at the highest price possible for the oil or gas sold. Finally, the *amicus curiae* for the Watsons contend that the take-or-pay payments are actually a marketing substitute, and that by taking the take-or-pay settlements, the lessee, in effect, markets the gas.

## THE TRIAL COURT PROPERLY GRANTED ROYE'S MOTION FOR SUMMARY JUDGMENT AS THERE WAS NO PRODUCTION OR SALE AS REQUIRED UNDER THE LEASE ROYALTY CLAUSES.

The standard of review applied in appeals from motions of summary judgment requires this Court to remain confined to issues presented by record. *Northrip v. Montgomery Ward & Co.*, 529 P.2d 489, 494 (Okla.1974). Furthermore, when facts are presented to the trial court on a motion for summary judgment, this Court is free to render the judgment that the trial court should have rendered. *Hampton v. Surety Development Corp.*, 817 P.2d 1273, 1275 (Okla.1991). Also, in reviewing grant or denial of summary judgment, this Court will examine the pleadings and evidentiary materials to determine what facts are material to the cause of action, and to determine whether the evidentiary materials introduced indicate whether substantial controversy exists as to one material fact, and that this fact is in the movant's favor. All inferences and conclusions to be drawn from the underlying facts, contained in such materials as affidavits, admissions, depositions, pleadings, exhibits and the like, must be viewed in a light most favorable to the party opposing this motion. *Ross v. The City of Shawnee*, 683 P.2d 535, 536 (Okla.1984).

In the present case we find the lease terms decide the outcome. The royalty clause in the first lease executed between the Watsons and G.W. Drieth, Inc. (later acquired by Roye) reads:

> Lessee covenants and agrees to pay lessor as royalty on all oil, condensate, gas, asphalt and other minerals and substances produced, *saved and sold* from the premises one-eighth of the gross proceeds received from the sale thereof at the mouth of the well, or if not sold at the mouth of the well but *sold or used* off the premises or for the manufacture of gasoline or any other product, then one-eighth of the market value thereof at the mouth of the well . . .

In the other two leases executed between Roye and the Watsons the royalty clauses read:

> To pay lessor for gas of whatsoever nature or kind (with all of its constituents) *produced and sold* or used off the leased premises or used in the manufacture of products therefrom, 25% of the gross proceeds received for the *gas sold, used off premises, or in the manufacture of products therefrom,* but in no event more than 25% of the actual amount received by the lessee, said payments to be made monthly.

It is apparent from the lease language that the Watsons are entitled to royalties on gas produced and sold or used off the leased premises, or gas produced saved and sold from the premises.[8] In *Walden v. Potts*, 194 Okla. 453, 152 P.2d 923 (1944), this Court defined the word "produced" as it is used in the habendum clause ("so long as oil and gas is produced in paying quantities") to mean not only discovery of the product, but also extracting it from the ground. In *Wood v. TXO Production Corp.*, 854 P.2d 880, 881 (Okla.1992), we determined that gas is "sold" when it enters the purchaser's line. Furthermore, this Court has held that "royalty" is the interest in production where a property is under lease for oil and gas. *Hays v. Phoenix Mutual Life Ins. Co.*, 391 P.2d 214 (Okla.1964).

---

**8.** The present case differs from the *Frey* and *Klein* cases as the royalty clauses in the present leases do not contain the language "amount realized" from the sale of the gas. That language was the linchpin of the holding in those cases. The royalty clause language found in the instant case is more in accord with the jurisdictions that have held in favor of the producer.

■ Although oil and gas leases are to be construed against lessee and in favor of lessor, *Probst v. Ingram,* 373 P.2d 58, 62 (Okla.1962); *Simon v. Foster,* 373 P.2d 28, 30 (Okla.1962), the contract must be taken as a whole so as to "give effect to every part using each clause to help interpret the others and that apply the related rule of interpretation, *15 O.S.1961, § 155,* that the intention of the parties is to be ascertained from the writing alone if possible." *Panhandle Cooperative Royalty Co. v. Cunningham,* 495 P.2d 108, 113 (Okla.1972). Oil and gas leases are to be construed in accord with reasonable intent of the parties, if ascertainable from the four corners of the contract. *Davon Drilling Company v. Ginder,* 467 P.2d 470, 472 (Okla. 1970). A fundamental precept of contract law in Oklahoma is that the law will not make a better contract than the parties themselves entered. The judicial function of this Court is to enforce the contract as it is written. *Great Western Oil & Gas Co. v. Mitchell,* 326 P.2d 794, 798 (Okla.1958). We therefore hold that, under Oklahoma law, viewing the lease agreement as a whole, a royalty owner, absent clear language to the contrary in the lease, is not entitled to share in take-or-pay settlements.

## THE WATSONS ARE NOT THIRD PARTY BENEFICIARIES.

■ The Watsons, in the present case, also claim to be third party beneficiaries of the Gas purchase contract, arguing that, when a lessee enters into a long-term gas contract, lessee is fulfilling its implied duty to market and, thus, avoids the possible cancellation of the lease. Hence, the Watsons feel that they are intended third-party beneficiaries. This argument is not in accordance with Oklahoma law, which requires that a contract must be made for the express benefit of a third-party for that party to have the right to enforce that contract as a third-party beneficiary. *Drummond v. Johnson,* 643 P.2d 634 (Okla.1982). See, *Gerard J.W. Bos & Co., Inc. v. Harkins & Co.,* 883 F.2d 379 (5th Cir.1989).

## ATTORNEY FEES

■ In the present case the trial court awarded attorney fees to Roye and Arkla as a result of the granting of summary judgment against the Watsons. The trial court awarded Roye $13,617.20, $12,810.50 for attorney fees, $506.70 for costs, and $300.00 for expert witness fees. The trial court also awarded Arkla $13,617.20 for attorney fees, costs and expert witness fees. The trial court reached this decision based on *12A O.S.Supp.1990, § 2–107(1),* which provides that a gas purchase contract is a contract for the sale of goods, and on *12 O.S.1991, § 936,* because this action was brought pursuant to *52 O.S.Supp.1989, § 540 (renumbered as § 570.10 of Title 52 by Laws 1992, c. 190 § 28).*

*Title 12A O.S.Supp.1990, § 2–107(1)* reads: A contract for the sale of minerals or the like, including oil and gas, or a structure or its material to be removed from realty is a contract for the sale of goods within this article if they are to be severed by the seller, but until severance, a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

*Title 12 O.S.1991, § 936* provides: In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to [of] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The award of attorney fees to Roye and Arkla were proper as summary judgment was properly granted. The award of attorney fees is proper not only under *12A O.S.Supp.1990, § 2–107(1)* and *12 O.S.1991, § 936,* but also under *52 O.S.Supp.1989, § 540(E) (renumbered as § 570.10 of Title 52 by Laws 1992, c. 190 § 28),* which reads: The district court for the county in which the oil or gas well is located shall have jurisdiction over all proceedings brought pursuant to this act. The prevailing party in any proceeding brought pursuant to this act shall be entitled to recover any court costs and reasonable attorney fees.

Therefore, the trial court's award of costs and attorney fees was proper, and the trial court's order is affirmed.

## CONCLUSION

In conclusion, a royalty owner is not entitled to share in take-or-pay settlements unless it is clear from the four corners of the document that the lessor is entitled to share in such proceeds. Also, a royalty owner cannot claim that he is a third party beneficiary of such settlements unless he can show that he was intended to be such. Finally, under Oklahoma law, under *52 O.S.1991, § 540,* a purchaser of production shall be exempt from the paying the royalty owner, and the producer shall be substituted for the purchaser where the producer and purchaser have entered into arrangements whereby the proceeds are paid by the purchaser to the producer who assumes the responsibility of paying the proceeds to persons legally entitled.

**Certiorari Previously Granted; Court of Appeals Opinion Vacated; Trial Court Granting of Summary Judgment Affirmed.**

LAVENDER, SIMMS, OPALA and WATT, JJ., concur.

ALMA WILSON, C.J., KAUGER, V.C.J., and HARGRAVE, HODGES and SUMMERS, JJ., dissent.

